Nos. 24-1064, 24-1065

# IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

---

## IN RE: MARRIOTT INTERNATIONAL CUSTOMER DATA SECURITY BREACH LITIGATION

---

## OPENING BRIEF OF DEFENDANT-APPELLANT MARRIOTT INTERNATIONAL, INC. (PUBLIC)

---

*On Appeal from the United States District Court
for the District of Maryland, MDL No. 19-md-2879 (Bailey, J.)*

---

Daniel R. Warren
Lisa M. Ghannoum
Dante A. Marinucci
Kyle T. Cutts
BAKER & HOSTETLER LLP
127 Public Square
Suite 200
Cleveland, OH 44114
(216) 621-0200

Gilbert S. Keteltas
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 200
Washington, DC 20036
(202) 861-1530

Lindsay C. Harrison
Matthew S. Hellman
Elizabeth B. Deutsch
Mary E. Marshall
Emanuel Powell III
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
mhellman@jenner.com

*Counsel for Defendant-Appellant Marriott International, Inc.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Defendant-Appellant Marriott International, Inc. ("Marriott") certifies that Marriott International, Inc. (NASDAQ: MAR) is a publicly owned company and that no public corporation or entity owns 10% or more of its stock.

## TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ................................................. i

TABLE OF AUTHORITIES .................................................................... v

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ........................................................5

STATEMENT OF ISSUES.....................................................................5

STATEMENT OF THE CASE ...............................................................6

    A.    Marriott Learns Of Starwood's Data Security Incident. .........................................................................6

    B.    Plaintiffs File Dozens Of Lawsuits, And The JPML Directs Multidistrict Litigation To Address Common Pretrial Issues.................................................6

    C.    Plaintiffs Rely On Allegations Of Identity Theft To Avoid Dismissal, And Marriott Raises Its Class-Waiver Defense. ..............................................7

    D.    Lacking Evidence Of Identity Theft, Plaintiffs Pivot To An "Overpayment" Theory And Move For Class Certification Based In Part On The SPG Terms.........................8

    E.    Marriott Opposes Class Certification, Invoking The Class-Action Waiver And Other Rule 23 Defects......................10

    F.    Judge Grimm Redefines Plaintiffs' Proposed Classes And Certifies The Largest-Ever Data Incident Classes.................................................13

    G.    The Fourth Circuit Vacates Class Certification. ........................15

    H.    On Remand, Judge Bailey "Disagree[s]" With The Fourth Circuit And Recertifies Identical Classes. ....................16

STANDARD OF REVIEW........................................................18

SUMMARY OF ARGUMENT ..............................................18

ARGUMENT...........................................................................20

I.   The Parties' Class-Action Waiver Precludes Class
     Certification.................................................................20

     A.   Marriott Timely Invoked And Never Disavowed Its
          Class-Waiver Defense. .......................................20

          1.   Marriott Timely Asserted Its Class-Waiver
               Defense. .....................................................21

          2.   Mere Participation In An MDL Or Bellwether
               Process Does Not Disavow A Class-Action
               Waiver............................................................23

          3.   Marriott Did Not Indirectly Give Up Its
               Defense By Supposedly Waiving Venue Or
               Choice Of Law. ...........................................27

     B.   The Class-Action Waiver Is Enforceable. ..................31

          1.   The Federal Rules Of Civil Procedure Do Not
               Bar Class-Action Waivers. ..................................31

          2.   The Class-Action Waiver Is Not
               Unconscionable...............................................34

     C.   The Class Waiver Is Applicable To This Dispute And
          Requires Reversal...................................................37

II.  The Certified Classes Are Not Ascertainable. .......................40

     A.   Plaintiffs Created This Problem By Shifting
          Theories. ............................................................41

B.   There Is No Administratively Feasible Way To Prove The Negative: Non-Reimbursement. .................................42

C.   Neither Plaintiffs Nor The District Court Have Overcome This Ascertainability Problem. ....................................44

III.  Certification Is Improper Because Plaintiffs' Damages Model Does Not Satisfy *Comcast* and Rule 23. ...........................49

A.   Rule 23 Requires Courts To Subject Plaintiffs' Damages Model To "Rigorous Analysis."....................................50

B.   Plaintiffs' Damages Model Is Dependent On Their Assumption Of Co-Movement. ........................................52

C.   Plaintiffs' Debunked Co-Movement Assumption Fails *Comcast*....................................................................55

IV.  The District Court Erred As A Matter Of Law In Certifying Issue Classes Under Rule 23(c)(4)........................................60

CONCLUSION ............................................................................61

# TABLE OF AUTHORITIES

## CASES

*200 East 87th Street Associates v. MTS, Inc.*, 793 F.Supp.1237
  (S.D.N.Y.), *aff'd*, 978 F.2d 706 (2d Cir. 1992)...................................21

*Aleman v. Park West Galleries, Inc. (In re Park West Galleries,
  Inc., Marketing & Sales Practices Litigation)*, 655 F.Supp.2d
  1378 (J.P.M.L. 2009)..............................................................................29

*In re Aluminum Warehousing Antitrust Litigation*, 336 F.R.D.
  5 (S.D.N.Y. 2020)............................................................................50-51

*American Express Co. v. Italian Colors Restaurant*, 570 U.S.
  228 (2013).................................................................................................33

*American Recovery Corp. v. Computerized Thermal Imaging,
  Inc.*, 96 F.3d 88 (4th Cir. 1996).....................................................37, 38, 39

*Application of Whitehaven S.F., LLC v. Spangler*, 45 F.Supp.3d
  333 (S.D.N.Y. 2014), *aff'd sub nom. Whitehaven S.F., LLC v.
  Spangler*, 633 F. App'x 544 (2d Cir. 2015)................................... 36-37

*Brandle Meadows, LLC v. Bette*, 84 A.D.3d 1579 (N.Y. App. Div.
  2011) .........................................................................................................38

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015)..................................51, 60

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015) ...........................................40

*Cannon v. Armstrong Containers Inc.*, 92 F.4th 688 (7th Cir.
  2024)..........................................................................................................26

*Career Counseling, Inc. v. AmeriFactors Financial Group,
  LLC*, 91 F.4th 202 (4th Cir. 2024) ......................................................43

*Carrera v. Bayer Corp.*, 727 F.3d 300 (3d Cir. 2013) ...............................46, 48

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494
  U.S. 558 (1990) .......................................................................................47

*Chesapeake Bay Foundation, Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690 (4th Cir. 1989)..................................................39

*Chun v. Korean Airlines Co., Ltd. (In re Korean Air Lines Co., Ltd.)*, 642 F.3d 685 (9th Cir. 2011) ..........................................26

*Coe v. Coca-Cola Co.*, 2023 WL 7524396 (W.D.N.Y. Nov. 14, 2023) .......................................................................................36

*Collins & Aikman Products Co. v. Building Systems, Inc.*, 58 F.3d 16 (2d Cir. 1995)............................................................37

*Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) ...............3-4, 49, 50, 51, 56, 60

*In re Conifer Realty LLC (EnviroTech Services, Inc.)*, 106 A.D.3d 1251 (N.Y. App. Div. 2013)...................................36

*Convergys Corp. v. National Labor Relations Board*, 866 F.3d 635 (5th Cir. 2017) ..............................................................32

*Crews v. TitleMax of Delaware, Inc.*, 2023 WL 2652242 (M.D. Pa. Mar. 27, 2023).....................................................................32

*Cuming v. South Carolina Lottery Commission*, 2008 WL 906705 (D.S.C. Mar. 31, 2008)..............................................43

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).......................................................................................51

*David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245 (2d Cir. 1991)............................................36

*Davis v. Capital One, N.A.*, 2023 WL 6964051 (E.D. Va. Oct. 20, 2023) .......................................................................................43

*DeLuca v. Royal Caribbean Cruises, Ltd.*, 244 F.Supp.3d 1342 (S.D. Fla. 2017) ................................................................32-33

*Dimery v. Convergys Corp.*, 2018 WL 1471892 (D.S.C. Mar. 26, 2018)........................................................................................32

*Elkins v. United States*, 364 U.S. 206 (1960) ....................................43

*EQT Production Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) .............................................................. 3, 40, 42, 43, 44, 48, 60

*Faggiano v. CVS Pharmacy, Inc.*, 283 F.Supp.3d 33 (E.D.N.Y. 2017) ....................................................................................28

*Filho v. Safra National Bank of New York*, 2014 WL 12776165 (S.D.N.Y. Mar. 11, 2014) ........................................................36

*Francis v. Allstate Insurance Co.*, 709 F.3d 362 (4th Cir. 2013) ............. 30-31

*Gariety v. Grant Thornton, LLP*, 368 F.3d 356 (4th Cir. 2004).......................18

*Gilbert Frank Corp. v. Federal Insurance Co.*, 520 N.E.2d 512 (N.Y. 1988) ........................................................................ 20-21, 30

*Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824 (N.Y. 1988) ....................................................................................35

*GMS Industrial Supply, Inc. v. G & S Supply, LLC*, 441 F.Supp.3d 221 (E.D. Va. 2020) ........................................................28

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) ....................................47

*Gregory v. Finova Capital Corp.*, 442 F.3d 188 (4th Cir. 2006) ....................18

*In re H & R Block Refund Anticipation Loan Litigation*, 59 F.Supp.3d 903 (N.D. Ill. 2014) ................................................. 23-24

*Hooper v. Advance America, Cash Advance Centers of Missouri, Inc.*, 589 F.3d 917 (8th Cir. 2009)....................................30

*Hough v. Regions Financial Corp. (In re Checking Account Overdraft Litigation)*, 672 F.3d 1224 (11th Cir. 2012) ...............................23

*J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315 (4th Cir. 1988) ...............................................................39

*In re Jamster Marketing Litigation*, 2008 WL 4858506 (S.D. Cal. Nov. 10, 2008), *amended*, 2009 WL 250089 (S.D. Cal. Feb. 2, 2009) ....................................................................................24

*Jeong v. Nexo Capital Inc.*, 2022 WL 3590329 (N.D. Cal. Aug. 22, 2022) ................................................................................32

*Karhu v. Vital Pharmaceuticals, Inc.*, 621 F. App'x 945 (11th Cir. 2015) ................................................................................48

*Kelly v. RealPage Inc.*, 47 F.4th 202 (3d Cir. 2022)........................43

*Korea Week, Inc. v. Got Capital, LLC*, 2016 WL 3049490 (E.D. Pa. May 27, 2016)........................................................................32

*Krakauer v. Dish Network, LLC*, 925 F.3d 643 (4th Cir. 2019) ....................41

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) ..............................................................................26

*Lindsay v. Carnival Corp.*, 2021 WL 2682566 (W.D. Wash. June 30, 2021) ................................................................................32

*Lombardi v. DirecTV, Inc.*, 549 F. App'x 617 (9th Cir. 2013) ........................23

*Looper v. Cook Inc.*, 20 F.4th 387 (7th Cir. 2021)............................29

*MacIntyre v. Moore*, 335 F.Supp.3d 402 (W.D.N.Y. 2018) ...........................35

*Maldini v. Accenture LLP (In re Marriott International, Inc., Customer Data Security Breach Litigation)*, 341 F.R.D. 128 (D. Md. 2022) ..............................................................................1

*Marcus v. BMW of North America, LLC*, 687 F.3d 583 (3d Cir. 2012) ................................................................................48

*In re Marriott International, Inc.*, 78 F.4th 677 (4th Cir. 2023) ..............................................................15, 20, 22, 32

*Marvel Entertainment Group, Inc. v. Young Astronaut Council*, 1989 WL 129504 (S.D.N.Y. Oct. 27, 1989) ............................35

*Mazurkiewicz v. Clayton Homes, Inc.*, 971 F.Supp.2d 682 (S.D. Tex. 2013) ................................................................................33

*Mey v. DIRECTV, LLC*, 971 F.3d 284 (4th Cir. 2020) ...................................34

*Nayal v. HIP Network Services IPA, Inc.*, 620 F.Supp.2d 566 (S.D.N.Y. 2009)............................................................................35

*O'Reilly v. Board of Appeals of Montgomery County*, 942 F.2d 281 (4th Cir. 1991) .....................................................................39

*Palmer v. Convergys Corp.*, 2012 WL 425256 (M.D. Ga. Feb. 9, 2012) ...................................................................................33

*Pfizer, Inc. v. Lord*, 447 F.2d 122 (2d Cir. 1971)........................29

*Phillips v. E.I. DuPont de Nemours & Co. (In re Hanford Nuclear Reservation Litigation)*, 534 F.3d 986 (9th Cir. 2008) ...................................................................................26

*Primex International Corp. v. Wal-Mart Stores, Inc.*, 679 N.E.2d 624 (N.Y. 1997)...................................................38

*In re Rail Freight Fuel Surcharge Antitrust Litigation-MDL No. 1869*, 725 F.3d 244 (D.C. Cir. 2013) .................................4, 50, 51, 57, 60

*Rhodes v. E.I. du Pont de Nemours & Co.*, 253 F.R.D. 365 (S.D. W. Va. 2008) .........................................................43

*Roman v. Spirit Airlines, Inc.*, 2021 WL 4317318 (11th Cir. Sept. 23, 2021) ................................................................39

*Rosenfeld v. Port Authority of New York & New Jersey*, 108 F.Supp.2d 156 (E.D.N.Y. 2000).........................................35

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017) ..........................................46

*Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105 (4th Cir. 2013)............40, 56

*In re SFBC International, Inc., Securities & Derivative Litigation*, 435 F.Supp.2d 1355 (J.P.M.L. 2006) .........................29

*Solo v. Bausch & Lomb Inc.*, 2009 WL 4287706 (D.S.C. Sept. 25, 2009) ...................................................................43

*Thorn v. Jefferson-Pilot Life Insurance Co.*, 445 F.3d 311 (4th Cir. 2006) ........................................................................18

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)........................46

*U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247 (S.D.N.Y. June 25, 2015)........................................................................33

*United Food & Commercial Workers Unions & Employees Midwest Health Benefits Fund v. Warner Chilcott Ltd. (In re Asacol Antitrust Litigation)*, 907 F.3d 42 (1st Cir. 2018)................ 46-47

*Vieth v. Jubelirer*, 541 U.S. 267 (2004) ...............................42

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).................51, 60

*Woodell v. International Brotherhood of Electric Workers, Local 71*, 502 U.S. 93 (1991) ..............................................47

## STATUTES

28 U.S.C. § 1407(a) .......................................................24

## OTHER AUTHORITIES

Sungjin Cho et al., *Optimal Dynamic Hotel Pricing* (2018), https://economics.sas.upenn.edu/index.php/system/files/2018-04/hp_final_update.pdf ...............................................54, 55, 59

Greg Myre, *Pompeo Says China Is Responsible For Marriott Computer Hack, Espionage Is Growing* (Dec. 12, 2018), https://www.npr.org/2018/12/12/676199045/pompeo-says-china-is-responsibl........................................................8

4 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 11:18, Westlaw (6th ed. updated Nov. 2023) ...........................26

David E. Sanger et al., *Marriott Data Breach is Traced to Chinese Hackers as U.S. Readies Crackdown on Beijing*, N.Y. Times (Dec. 11, 2018) ............................................8

Melissa J. Whitney, Fed. Jud. Ctr. & Jud. Panel on Multidistrict
  Litig., *Bellwether Trials in MDL Proceedings* (2019) ...............................26

16 Charles Alan Wright & Arthur R. Miller, *Federal Practice &
  Procedure* § 3931.1, Westlaw (3d ed. updated Apr. 2023) ........................40

## INTRODUCTION

On remand from this Court's order vacating class certification, the district court once again refused to enforce the parties' class-action waiver and recertified some of the largest consumer-data classes in history. JA1661, JA1670. But every single named plaintiff and putative class member expressly agreed to resolve "[a]ny disputes … individually without any class action." JA1659. This Court should reverse and hold that Marriott's class-action waiver means what it says: The parties must resolve their dispute "without any class action."

Last year, this Court held that the district court had erred by certifying sprawling classes without first addressing the effect of the parties' class-action waiver. The Court observed that Marriott appeared to have preserved that defense because it "raised its class-waiver defense in its answer to the plaintiffs' complaint, and then again at class certification." *Maldini v. Accenture LLP (In re Marriott Int'l, Inc.)*, 78 F.4th 677, 687 (4th Cir. 2023). As this Court put it, it is "not obvious that more would be required." *Id.*

But on remand, the district court "respectfully disagree[d]." JA1661. It held that Marriott had implicitly waived the defense merely by

participating in an MDL with a bellwether process. JA1660-1662. That is wrong, and no other court in the country has ever so held. If the district court's rule is allowed to stand, no defendant in this Circuit could ever agree to an MDL without jeopardizing its contract defenses.

The district court went further still, holding in the alternative that the Federal Rules of Civil Procedure ban class-action waivers outright. JA1667-1669. That is not the law in the Fourth Circuit or any other. Finally, and again without a single case in support, the court found the class-action waiver "adhesive" and unfair, contrary to yet another wall of precedent. JA1659, JA1670.

The district court was wrong in every respect. Marriott preserved and repeatedly asserted its class-waiver defense. The waiver is enforceable and applicable, and it disposes of class certification *in toto*. Were the district court's contrary ruling affirmed, this Circuit would become a nationwide outlier and work fundamental change to blackletter law.

The Court need go no further to reverse the recertification order. But the class-waiver defense is just one of several reasons reversal is required.

*Ascertainability*. Plaintiffs' theory of damages is that they "overpaid" for their rooms in light of the data incident. As the district court recognized,

any person who was reimbursed for her stay did not pay, so could not "overpay," and thus suffered no injury under plaintiffs' theory of harm. JA1234-1235. As a result, the recertified classes are limited to people who actually "bore the economic burden" of their stays. Discovery, however, revealed that nearly 90% of named plaintiffs' stays were reimbursed (typically by an employer), and 30% of named plaintiffs had *all* their stays reimbursed. *See* Dkt. 885, Exs. 40-54 (named plaintiffs' stay spreadsheets); JA1345. Neither plaintiffs nor the district court identified an "administratively feasible" way to determine which of the tens of millions of prospective class members actually paid and were never reimbursed for their rooms. There is no database or set of documents—no number of bank statements or pay stubs or credit card bills—capable of proving the negative, *i.e.*, the absence of reimbursement. Accordingly, class membership cannot be determined "without extensive and individualized fact-finding or 'mini-trials'" that make "a class action … inappropriate." *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)).

*Predominance.* Nor do plaintiffs have a model capable of calculating damages on a classwide basis, as Rule 23 requires. *See Comcast Corp. v.*

*Behrend*, 569 U.S. 27 (2013). Plaintiffs' theory of calculating damages classwide rests on an assumption untested by their own expert—and disproved by Marriott's—that hotel prices always move in sync (such that any "overpayment" could be calculated by comparing a room rate to a competitor's on any random day, irrespective of room or rate type, season, events, or any other variables). The district court held that it could always reject plaintiffs' model later if it proved unworkable, but Rule 23 requires plaintiffs to establish—and the district court to ensure—that their model can calculate classwide damages *before*, not after, certification. Plaintiffs have put forward no reliable way of determining damages on a classwide basis, meaning "[c]ommon questions of fact cannot predominate" and Rule 23 cannot be satisfied. *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 253 (D.C. Cir. 2013).

*Issue Classes*. Finally, as Accenture argues, the district court erred by seeking to circumvent Rule 23's requirements by certifying (c)(4) issue classes.

This Court previously vacated the district court's errant class certification order and remanded for further proceedings. Today, this Court should reverse and resolve class certification for good.

4

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332. Marriott and Accenture timely filed petitions under Federal Rule of Civil Procedure 23(f) on December 13, 2023, which this Court granted. This Court's jurisdiction is proper under 28 U.S.C. § 1292(e) and Federal Rule of Civil Procedure 23(f).

## STATEMENT OF ISSUES

1. Whether the district court erred by certifying classes where every class member waived the right to pursue class litigation.

2. Whether the district court erred by certifying classes where ascertaining standing and class membership will require tens of millions of mini-trials on who bore the "economic burden" of the alleged misconduct.

3. Whether the district court erred by certifying classes where the classwide damages theory rests on a premise that plaintiffs' expert never tested and defendants' expert disproved.

4. Whether the district court erred by invoking Rule 23(c)(4) to certify issue classes containing millions of individuals who lack standing.

## STATEMENT OF THE CASE

### A.    Marriott Learns Of Starwood's Data Security Incident.

In September 2016, Marriott acquired Starwood. JA1227. Unbeknownst to Marriott, an unauthorized third party had obtained access to Starwood's reservation database prior to the acquisition. JA1228. In September 2018, Accenture observed abnormal activity. JA1228. Investigation revealed that an unauthorized party had access to certain information in the Starwood Preferred Guest ("SPG") database. JA1227-1228; JA1318.

### B.    Plaintiffs File Dozens Of Lawsuits, And The JPML Directs Multidistrict Litigation To Address Common Pretrial Issues.

Dozens of putative class actions were filed across the country. The Judicial Panel on Multidistrict Litigation ("JPML") directed pretrial proceedings on common threshold questions in the United States District Court for the District of Maryland. JA152.

Plaintiffs filed a consolidated complaint bringing ninety-six claims under the laws of all fifty states. JA413. At the court's urging, the parties selected ten bellwether claims on which to test common issues and defenses. JA408; *see* JA376; Dkt. 248; Dkt. 238 at 11. As part of that process, they expressly agreed that "neither party was waiving any arguments it may

6

have regarding choice of law and that each party is reserving its rights as to the same." JA408; *see* JA1688 (Marriott again reserving choice-of-law arguments in motion to dismiss).

### C. Plaintiffs Rely On Allegations Of Identity Theft To Avoid Dismissal, And Marriott Raises Its Class-Waiver Defense.

Relying primarily on plaintiffs' allegations of identity theft stemming from the data incident, the district court (Grimm, J.) largely denied defendants' motion to dismiss.[1] JA854-855. Marriott then answered and raised plaintiffs' waiver of class relief as an affirmative defense. JA957.

During discovery, Marriott asked plaintiffs to identify the contracts they were relying upon for their class claims. JA1061. Plaintiffs kept their options open, naming thirty-one contracts potentially at issue. JA1726-1746; *see* JA1123-1124 (discussing interrogatory and response). Some contained class-action waivers, while others did not; the thirty-one contracts also contained inconsistent choice-of-law and venue provisions. *Compare, e.g.,* JA1601, JA1606 (Marriott Rewards and Website Terms, containing class-action waivers and Maryland choice-of-law and venue provisions), *with*

---

[1] At the motion-to-dismiss stage, Marriott gave notice of its intent to invoke its class-waiver defense, explaining that Marriott could not yet seek to enforce a specific contract(s)'s waiver because plaintiffs had not clarified which contract(s) they were relying on. JA1710.

JA1466 (SPG Program Terms & Conditions, containing class-action waiver and New York choice-of-law and venue provisions).

Plaintiffs, in turn—aware of Marriott's class-waiver defense—asked Marriott to identify the contracts it contended contained a class-action waiver. JA1064. Marriott responded by pointing to the Starwood Preferred Guest Program Terms & Conditions ("SPG Terms"), among other contracts. *See* JA1066-1067.

### D. Lacking Evidence Of Identity Theft, Plaintiffs Pivot To An "Overpayment" Theory And Move For Class Certification Based In Part On The SPG Terms.

Discovery did not bear out anything approaching classwide identity theft. JA1318-1320.[2] Plaintiffs nevertheless moved to certify thirteen sprawling classes for breach of contract, consumer fraud, and negligence encompassing every consumer in all bellwether states who had provided any

---

[2] Government officials have stated that the incident was the product of intelligence gathering by a foreign government, not hackers trying to steal identities. Greg Myre, *Pompeo Says China Is Responsible For Marriott Computer Hack, Espionage Is Growing*, NPR.org (Dec. 12, 2018), https://www.npr.org/2018/12/12/676199045/pompeo-says-china-is-responsible-for-marriott-computer-hack-espionage-is-growing; *see* David E. Sanger et al., *Marriott Data Breach is Traced to Chinese Hackers as U.S. Readies Crackdown on Beijing*, N.Y. Times (Dec. 11, 2018), https://www.nytimes.com/2018/12/11/us/politics/trump-china-trade.html.

personal information to Starwood before and during the incident. *See* JA1387-1390.

In so doing, plaintiffs abandoned their meritless identity-theft theory of injury. They now argued instead that the data incident caused them to overpay for their hotel stays—*i.e.*, they would have paid less for their rooms had they known about the data incident. *See* JA1386; JA1257-1258. From that premise, plaintiffs claimed to be "injured" by "overpaying" and sought "damages" in the amount of "overpayment." *See* JA1257.[3]

At class certification, plaintiffs also for the first time defined their breach-of-contract claims around one contract: the SPG Terms. Those terms contain a class-action waiver that reads: "Any disputes arising out of or related to the SPG Program or these SPG Program Terms will be handled individually without any class action[.]" JA1466. Plaintiffs limited the contract classes "solely" to SPG members who had signed the SPG Terms. JA1478. Plaintiffs also sought certification of negligence classes in Florida,

---

[3] Plaintiffs also claimed their personal information had "inherent value." But when plaintiffs proffered expert testimony on that theory, the district court rejected it under *Daubert* as unduly speculative. JA1189-1191. The district court noted that plaintiffs' expert, Dr. Prince, was "content to just trust his assumptions that his model would work, and that his algorithm was equal to the task of performing the calculations that were needed." JA1222.

Georgia, Maryland, and Connecticut, and consumer protection classes in California, Maryland, Michigan, and New York. JA1387-1389. These classes were composed of both SPG members and non-members.

### E. Marriott Opposes Class Certification, Invoking The Class-Action Waiver And Other Rule 23 Defects.

Marriott opposed class certification on numerous grounds. JA1303. As it had foretold in its answer and interrogatories, Marriott argued that every SPG member—which included *all* bellwether plaintiffs—had agreed, under the SPG Terms, to resolve "[a]ny dispute … individually without any class action." JA1351-1352 (quoting SPG Terms § 13.21, JA1466). That meant that the contract classes (defined by SPG membership) could not be certified. And as to the consumer protection and negligence classes—for which the class representatives were SPG members and the putative classes contained both members and non-members—named plaintiffs were not typical or adequate class representatives. JA1354-1355.

On this point, in reply, plaintiffs briefly argued that the waiver was not applicable because their breach-of-contract claims centered on the Privacy Statement (which plaintiffs insisted was a separate agreement, despite the fact that it was incorporated by reference into the SPG Terms) and that Marriott had waived the defense by raising it at class certification (rather

10

than bellwether selection or status conferences) and by agreeing to proceed with an MDL in Maryland (rather than New York, the venue specified in the SPG Terms). *See* JA1480-1483.

Plaintiffs did not argue that the parties' class-action waiver was unconscionable under New York law or any other law. *See* JA1480-1483. Plaintiffs' sole mention of supposed unconscionability issues was a passing reference at the class-certification hearing after briefing had concluded. *See* JA1160-1162 (plaintiffs' counsel representing: "I previously argued that [the class waivers] don't apply … and we discuss that in our reply brief further … but if they do apply, of course they would be unconscionable if those provisions mean what Marriott says they mean."); *accord* Appellee Br. 29 n.10, Case No. 22-1745 (acknowledging that plaintiffs argued for the first time "at the class certification hearing that if the venue clause applied, it was unenforceable" (citing same)).

In opposition to class certification, Marriott also argued that plaintiffs lacked standing as to, and could not recover for, reimbursed stays. JA1345. Marriott further argued that plaintiffs had proffered no administratively feasible means of ascertaining which putative class members had, in fact, not been reimbursed. JA1363-1364.

As to damages, Marriott explained that the model proposed by plaintiffs' expert, Dr. Prince, failed *Comcast* because it was not capable of proving classwide damages. *See* JA1334-1342. Dr. Prince claimed he could calculate "overpayment" by running analyses using competitor hotel prices for each individual stay by each individual class member. JA1199-1204. He initially stated that he would run that model separately with different competitor-hotel inputs for every stay by every one of the 20 million prospective class members over the entire 4.5-year class period. *See* JA2030. But that approach proved unworkable because it would require Dr. Prince to run his model millions of times, using data he did not have and could not get—including competitor hotel pricing for every night in every local market at which any putative class member had stayed. JA1334-1337. Dr. Prince all but conceded as much and, in his rebuttal report, changed his approach, suddenly claiming he could run his analysis once for a given hotel for *all* stays by *all* putative class members over the *entire* class period. JA2733-2734.

Dr. Prince's new method rested on a single assumption, which he acknowledged he had not tested: that hotel prices move perfectly in tandem over time, across room and rate types, and irrespective of season, special events, or other factors. *See* JA2733-2734; JA2908. Marriott's expert

disproved that "co-movement" assumption by showing that Marriott's prices did not co-move with competitors'. JA3089. Her testimony was unrebutted. The district court stated that if Dr. Prince's methodology proved unworkable, he could just decertify the classes later. JA1277.

### F.    Judge Grimm Redefines Plaintiffs' Proposed Classes And Certifies The Largest-Ever Data Incident Classes.

The district court found that plaintiffs' classes could not be certified as proposed and proceeded to make two fundamental revisions.

*First*, because the SPG class-action waiver applied only to SPG members—and so raised typicality and adequacy problems as to plaintiffs' non-contract claims—the district court *sua sponte* redefined the non-contract classes to include only SPG members (as the contract classes did). JA1248-1250, JA1252. The court deferred ruling on the waiver's "applicability," which it held it could address later at summary judgment. JA1250.

*Second*, the district court also recognized that putative class members who had been reimbursed for their hotel stays did not "overpay," and so were uninjured and lacked standing. To avoid certifying classes comprising largely uninjured persons, the court redefined the classes to include only those SPG members who "bore the economic burden for a hotel stay."

JA1235-1236, JA1240-1241. The district court acknowledged that "[d]efining putative class members as those 'who bore the economic burden' … raises some concerns regarding ascertainability." JA1235. The court believed it would be possible to "sort through the *factual* circumstances of reimbursement in a way that is consistent with predominance." JA1235. But it did not posit (and plaintiffs lacked) a database or definite set of documents that could prove class membership. The court went on to suggest that self-certification could supplement Marriott's databases and other "incomplete" records. JA1239-1242.

The court also acknowledged that Dr. Prince's damages model depended on his assumption of co-movement. The court stated (mistakenly) that Dr. Prince had tested that assumption and that, if the model proved unworkable, the classes could be decertified. JA1272-1277.

The district court further certified Rule 23(c)(4) negligence classes limited to duty and breach. JA1299.

All told, in five separate places in its opinion, the district court stated it could later decertify the classes if Rule 23's requirements were in fact unmet. JA1243, JA1277, JA1284-1285. In the meantime, the court certified sprawling classes encompassing approximately 20 million people.

G.     The Fourth Circuit Vacates Class Certification.

This Court granted 23(f) review and unanimously vacated the district court's class certification order. *In re Marriott Int'l, Inc.*, 78 F.4th at 679-80, 687.

The panel "agree[d] with Marriott on [the] threshold and critical point: The district court erred when it declined to consider, before certifying class actions against Marriott, the import of a purported class-action waiver signed by every putative class member" as part of the SPG Terms. *Id.* at 685. And the opinion stated that Marriott had "raised its class-waiver defense in its answer to the plaintiffs' complaint, and then again at class certification…. [A]t least as a general rule, it is not obvious that more would be required." *Id.* at 687. Indeed, the panel explained that resolving class-action waivers at class certification is the "consensus practice." *Id.* at 686.

This Court also had full briefing and argument on the enforceability and applicability of the class-action waiver, as well as the additional Rule 23 grounds that class certification is not warranted (ascertainability and *Comcast*, as well as issue classes). But the Court declined to answer those questions, instead remanding the matter to the district court "for further proceedings consistent with this opinion." *Id.* at 690.

15

## H.    On Remand, Judge Bailey "Disagree[s]" With The Fourth Circuit And Recertifies Identical Classes.

On remand, the case was reassigned to Judge Bailey. JA1509. He requested briefing on "the effect of the class waiver," JA1510, and certain questions concerning the section of the contract containing the waiver, JA1607. Pursuant to that request, the parties addressed the waiver's enforceability and applicability, as well as Marriott's purported repudiation of the waiver. *See* JA1511; Dkt. 1142; Dkt. 1146; Dkt. 1147.

Judge Bailey recertified the identical classes without a hearing (which Marriott had requested and no party opposed). JA1670. He began his legal analysis this way:

> In its decision, the Fourth Circuit indicated that by citing the Choice of Law and Venue provision in its answer and only raising it in opposition to class certification, Marriott adequately preserved its individual claims provision. This Court respectfully disagrees.

JA1661.

On Judge Bailey's view, Marriott had waived the provision mandating that plaintiffs' claims be handled "[i]ndividually without class action" by agreeing to an MDL. JA1659-1662. The court went on to treat the class-action waiver as part of a unified, non-severable set of provisions governing litigation between the parties, including choice of law and venue

16

(notwithstanding the SPG Terms' no-waiver and severability clauses). JA1662. On that view of the SPG Terms, Judge Bailey reasoned that Marriott had waived "5/6" of the contract's relevant provisions, so it could not enforce the remaining 1/6—the class-action waiver. JA1662.

Judge Bailey went further still, holding that the parties' class-action waiver violates Rule 23 of the Federal Rule of Civil Procedure, quoting at length from a lone out-of-circuit, unpublished opinion by a magistrate judge from 2009. JA1663-1669 (quoting *Martrano v. Quizno's Franchise Co., L.L.C.*, 2009 WL 1704469, at *20-21 (W.D. Pa. June 15, 2009)).

Finally, Judge Bailey found the provision "adhesive" based on his "observations" that "[t]he heading … makes no reference to individual handling of claims," and "[t]he provision is buried on the last page of the [SPG] Terms." JA1659; JA1670.

Without any further analysis as to whether Rule 23's requirements were met, Judge Bailey promptly recertified classes identical to those "certified by Judge Grimm" and cited Judge Grimm's class certification order to incorporate its reasoning. JA1670.

This Court once more granted 23(f) review. JA1674.

17

## STANDARD OF REVIEW

"[P]laintiffs bear the burden … of demonstrating satisfaction of the Rule 23 requirements and the district court is required to make findings" as to each element "whether the plaintiffs carried their burden." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004).

This Court reviews a district court's certification for abuse of discretion. *Gregory v. Finova Cap. Corp.*, 442 F.3d 188, 190 (4th Cir. 2006). "A district court per se abuses its discretion when it makes an error of law or clearly errs in its factual findings" in determining those factors met. *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 317 (4th Cir. 2006).

## SUMMARY OF ARGUMENT

Class certification is barred for four independent reasons.

**I.** The parties' class-action waiver—which Marriott raised in its answer and again asserted in opposition to class certification—means Rule 23(a) and (b)(3)'s requirements cannot be satisfied. Contra the district court, Marriott did not give up its class-waiver defense by participating in an MDL with a bellwether process or by any other means; nor do the Federal Rules of Civil Procedure bar class waivers. The parties' class-action waiver is also enforceable under New York law. The provision straightforwardly applies

18

to this dispute, so this Court should reverse and resolve class certification once and for all.

**II.** The recertified classes are not ascertainable under Rule 23's threshold requirement because there is no administratively feasible means of determining class membership. No database or closed universe of documents can answer whether a prospective class member was *never* reimbursed and therefore "bore the economic burden" of her stay (consistent with the class definition). The district court's proposed solution—to sort out membership using a claims administrator and self-certification *after* liability is resolved—raises a host of additional problems.

**III.** Plaintiffs lack a model capable of measuring damages classwide, so they fail Rule 23(b)(3)'s predominance requirement under *Comcast*. Plaintiffs' model rests on a single, sweeping assumption that their expert admitted he did not test and that Marriott's expert disproved. No class can be certified on that record. Plaintiffs have not met their burden, and the district court did not conduct the required rigorous analysis.

**IV.** As Accenture argues, plaintiffs cannot circumvent these defects via Rule 23(c)(4) issue classes.

## ARGUMENT

## I.   The Parties' Class-Action Waiver Precludes Class Certification.

The SPG Terms doom class certification. Every single bellwether plaintiff and prospective class member pledged to resolve "[a]ny disputes … individually without any class action." JA1466 (SPG Terms § 13.21). Marriott raised that defense in its motion to dismiss, in its answer, during discovery, and at class certification and never disavowed it. The parties' clause is enforceable, and it governs this dispute. This Court should again reverse the class certification order.

### A.   Marriott Timely Invoked And Never Disavowed Its Class-Waiver Defense.

Judge Bailey is the first judge in the country to hold that a party gives up its class-waiver defense by participating in an MDL. That is not the law.

Waiver is an intentionally high bar.[4] It requires "a clear manifestation of intent by [the] defendant to relinquish" the contractual right. *Gilbert*

---

[4] Judge Bailey used the terms "waiver" and "forfeiture"—two distinct concepts with distinct legal tests—without making clear which he was analyzing. JA1660-1663. This Court in the prior appeal suggested that Marriott had not forfeited its class-action waiver argument because it had raised the defense at the proper stages of litigation (in its answer and at class certification). *See In re Marriott Int'l, Inc.*, 78 F.4th at 686-87. Marriott therefore construes Judge Bailey to have been analyzing the doctrine of

*Frank Corp. v. Fed. Ins. Co.*, 520 N.E.2d 512, 514 (N.Y. 1988). That intent "must be clearly established and cannot be inferred from doubtful or equivocal acts or language," and "the burden of proof is on the person claiming" repudiation or waiver—here, the plaintiffs. *200 E. 87th St. Assocs. v. MTS, Inc.*, 793 F.Supp.1237, 1251 (S.D.N.Y.) (quoting authority), *aff'd*, 978 F.2d 706 (2d Cir. 1992).

Marriott timely asserted its class-waiver defense. It did not waive that defense by participating in an MDL or agreeing to test bellwether claims, and it did not disavow that defense indirectly by supposedly waiving venue or choice of law (which, in any event, Marriott did not waive).

### 1.    Marriott Timely Asserted Its Class-Waiver Defense.

Marriott never waived—and repeatedly invoked—its class-waiver defense. Marriott raised the defense in its motion to dismiss. JA1710. Marriott raised it in its answer. JA957. Marriott raised it during discovery— during which plaintiffs asked Marriott which contract(s) formed the basis of its class-waiver defense, and Marriott answered: the SPG Terms. *See, e.g.*, JA1066 (Marriott's response to plaintiffs' Interrogatory 14); JA1123-1124

---

waiver, which concerns intentional acts of relinquishment rather than timing. In any event, Marriott also did not forfeit or otherwise disavow its class-waiver defense.

(discussing plaintiffs' responses to Marriott's Interrogatory 15, *see, e.g.*, JA1723); JA2211-2213 (raising waiver during Maldini deposition); JA2224-2226 (raising waiver during Cullen deposition). And Marriott raised it at class certification, JA1351-1352—which this Court recognized is the "consensus" time at which courts enforce these provisions. *In re Marriott Int'l, Inc.*, 78 F.4th at 686.

Against that litigation record, this Court rightly "question[ed]" whether plaintiffs' argument that Marriott had disavowed its defense was "strong." *Id.* at 683. As this Court put it: "[I]t is not obvious that more would be required" for Marriott to have preserved the defense. *Id.* This Court therefore stated that the district court would need to leverage its "'on the scene' presence" and point to "particulars of Marriott's litigation strategy," such as the "bellwether negotiation process" or other specific "motions practice" (beyond when Marriott raised its class-action waiver), if it were to find that Marriott had intentionally repudiated the provision. *Id.* at 687-88.

But Judge Bailey—who was assigned to the case on remand—lacked "on the scene" knowledge of this case's litigation history. And neither the district court nor plaintiffs identified anything further Marriott needed to do after the filing of plaintiffs' consolidated complaint to preserve its class-

waiver defense. Neither the district court nor plaintiffs cited a single case holding a defendant is required to do anything more or different than what Marriott did. Neither the district court nor plaintiffs identified any conduct by Marriott constituting "a clear manifestation of intent" to disavow the class-waiver defense. And neither the district court nor plaintiffs suggested that Marriott's invocation of the class-waiver defense came as a surprise or deprived plaintiffs of a fair opportunity to argue that the waiver was unenforceable or inapplicable. The only logical and legal conclusion is that Marriott preserved its class-waiver defense.

### 2.     Mere Participation In An MDL Or Bellwether Process Does Not Disavow A Class-Action Waiver.

Judge Bailey wrongly held there was *no time* at which Marriott could have raised its defense after plaintiffs filed their consolidated complaint because mere participation in the MDL had already waived it. JA1660-1662.

The district court did not cite a single case holding that participation in an MDL forfeits a class waiver. None exists. On the contrary, an unbroken line of authority enforces class-action waivers in MDLs. *See, e.g.*, *Lombardi v. DirecTV, Inc.*, 549 F. App'x 617, 619-20 (9th Cir. 2013); *Hough v. Regions Fin. Corp. (In re Checking Acct. Overdraft Litig.)*, 672 F.3d 1224, 1226, 1230 (11th Cir. 2012); *In re H & R Block Refund Anticipation Loan*

*Litig.*, 59 F.Supp.3d 903, 906, 910 (N.D. Ill. 2014); *In re Jamster Mktg. Litig.*, 2008 WL 4858506, at *1, *8 (S.D. Cal. Nov. 10, 2008), *amended*, 2009 WL 250089 (S.D. Cal. Feb. 2, 2009). The district court did not acknowledge, much less distinguish, this precedent.

The blackletter rule exists for good reason. MDLs are intended to "promote [] just and efficient conduct" where myriad similar suits are filed across the country by resolving common questions before remanding the cases back to the originating district courts. 28 U.S.C. § 1407(a). No defendant would ever agree to an MDL if the price of so doing were the waiver of its contract defenses.

This case illustrates the dangers and unfairness of the district court's approach. When Marriott agreed to the MDL process, there were dozens of cases pending against it around the country, invoking dozens of different contracts. Those contracts all had different terms; some, but not all, had class-action waivers. And plaintiffs took nearly three years after the MDL was constituted to reveal that their class contract claims were based on the SPG Terms. *Compare* JA152 (initiating MDL in 2019), *with* JA1389-1390 (limiting contract classes to SPG members in 2022). When Marriott agreed to the MDL, it could not have known which contracts would form the basis

24

of plaintiffs' class claims several years hence. Marriott therefore could not have intentionally relinquished the defenses found in those contracts.

Nor is the parties' class-action waiver in any way inconsistent with the MDL process, either as a general matter or under the specific language of the SPG Terms. Judge Bailey held that the parties' agreement that "[a]ny disputes … will be handled individually without any class action" constitutes a "single rule" to litigate in every respect absolutely "individually"—that is, without "any collective handling of the claims, *including* by class action." JA1659, JA1662 (emphasis added). Both the textual premise and the legal conclusion are faulty.

As to text, the word "individually" is modified by "without any class action." The parties did not agree to resolve their disputes "individually without any MDL"; they agreed to resolve them "individually without any class action." That is precisely what Marriott is seeking.

In any event, agreeing to litigate "individually" is not incompatible with an MDL. Parties in an MDL do not act in a representative capacity (as they do in class actions or under a private attorney general statute). The constituent cases "remain fundamentally separate actions," temporarily brought together for pretrial proceedings, then remanded back to their

courts of origin for trial. *Chun v. Korean Airlines Co., Ltd. (In re Korean Air Lines Co., Ltd.)*, 642 F.3d 685, 700 (9th Cir. 2011); *see Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34-36 (1998) (emphasizing that "the unconditional command of § 1407(a)" is "to remand any pending case to its originating court when, at the latest, [MDL] pretrial proceedings have run their course"). In other words, litigating in an MDL still treats the underlying cases "individually."

The same is true of a bellwether process. *Contra* JA1661 (district court stating that Marriott's "nominat[ion]" of bellwethers was "wholly inconsistent with handling cases on an individual basis"). Bellwethers merely test significant claims and defenses; they do not bind other parties or litigate claims on their behalf. *See, e.g., Cannon v. Armstrong Containers Inc.*, 92 F.4th 688 (7th Cir. 2024); *Phillips v. E.I. DuPont de Nemours & Co. (In re Hanford Nuclear Rsrv. Litig.)*, 534 F.3d 986, 1007 (9th Cir. 2008); Melissa J. Whitney, Fed. Jud. Ctr. & Jud. Panel on Multidistrict Litig., *Bellwether Trials in MDL Proceedings* 5-6 (2019); 4 William B. Rubenstein, *Newberg & Rubenstein on Class Actions* § 11:18, Westlaw (6th ed. updated Nov. 2023).

Plaintiffs are also flat wrong that Marriott's selection of bellwethers (or its acquiescence to plaintiffs' bellwethers) who were or may have been SPG members repudiated a class-waiver defense based on the SPG Terms. *See* Dkt. 982 (Joint Bellwether Class Certification Claims and Defenses Chart repeatedly listing the class waiver as an affirmative defense). Again, the entire point of a bellwether process is to test significant claims and defenses—Marriott did not waive its defense by agreeing to test it.

### 3. Marriott Did Not Indirectly Give Up Its Defense By Supposedly Waiving Venue Or Choice Of Law.

The district court alternatively found that Marriott indirectly gave up its class-action waiver by supposedly waiving the SPG Terms' venue and choice-of-law provisions. That, too, is wrong on multiple levels.

In the first place, the contract expressly forecloses the premise: that a waiver of the venue and choice-of-law provisions also waives the class-action waiver. The contract's severability clause states: "If any part of the[] SPG Program Terms is held to be unlawful or unenforceable, that part will be deemed deleted … and the remaining provisions will remain in force." JA1466. The SPG Terms also contain a no-waiver clause: "[F]ailure to insist upon strict compliance … will not be deemed a waiver of any rights." JA1466. These commonplace provisions allow the parties to enforce each contract

27

right as a standalone commitment. *See Faggiano v. CVS Pharmacy, Inc.*, 283 F.Supp.3d 33, 35, 37-38 & n.4 (E.D.N.Y. 2017). If another term is found invalid or waived, that does not touch the class-action waiver. *See GMS Indus. Supply, Inc. v. G & S Supply, LLC*, 441 F.Supp.3d 221, 228 (E.D. Va. 2020) ("[T]he clauses are divisible because they each impose unique requirements …. Their placement in the same paragraph does not alter that conclusion."). Thus, even if Marriott had waived another provision, rendering it unenforceable, the class-action waiver would stand. The district court did not even mention—much less refute—these clauses' effect.

In any event, Marriott did not waive venue or choice of law. For venue, the district court appeared to reason that because Marriott agreed to an MDL sited in the District of Maryland, Marriott waived the SPG Terms' New York venue provision. That is just a reprise of the district court's erroneous waiver-by-MDL theory. Every MDL needs to take place in *some* jurisdiction. Where, as here, and in many complex cases, there are multiple potentially relevant contracts with competing venue provisions, no single MDL location will satisfy them all. *Compare, e.g.*, JA1466 (SPG Terms, containing New York choice-of-law and venue provisions), *with* JA1601, JA1606 (Marriott Rewards and Website Terms, containing Maryland choice-

of-law and venue provisions). By the district court's logic, had Marriott agreed to an MDL sited in New York, it would have waived the venue provisions—and class-action waiver—of the Marriott Rewards contract.

Little wonder the law does not endorse that Catch-22. An MDL's venue does not dictate venue for the underlying actions; an MDL is merely "an artificial forum created for purposes of convenience and efficiency." *Looper v. Cook Inc.*, 20 F.4th 387, 392 (7th Cir. 2021) (quotation marks omitted). Venue questions in the constituent cases—including applicable contractual venue clauses—are resolved after MDL pretrial proceedings conclude. *See, e.g., Aleman v. Park W. Galleries, Inc. (In re Park W. Galleries, Inc., Mktg. & Sales Pracs. Litig.)*, 655 F.Supp.2d 1378, 1379 (J.P.M.L. 2009); *In re SFBC Int'l, Inc., Sec. & Derivative Litig.*, 435 F.Supp.2d 1355, 1356 (J.P.M.L. 2006); *Pfizer, Inc. v. Lord*, 447 F.2d 122, 124-25 (2d Cir. 1971). Marriott's agreement to an MDL in Maryland therefore did not waive the venue provision in the SPG Terms (or for that matter, the venue provisions in any of the thirty-one contracts plaintiffs put at issue), and it certainly did not waive the severable class-action waiver.

As to choice of law, the parties jointly and expressly *reserved* all choice-of-law arguments as part of their agreement for terms governing the

bellwether process. *See* JA408 (stipulating that "neither party was waiving any arguments it may have regarding choice of law and that each party is reserving its rights as to the same"); JA1688 (reiterating parties' agreement at motion-to-dismiss stage). An express reservation—agreed to as part of a protocol urged by Judge Grimm, *see* Dkt. 238 at 11; Dkt. 248; JA376—is not "a clear manifestation of intent by [the] defendant to relinquish" that right. *Gilbert Frank Corp.*, 520 N.E.2d at 514.

The district court claimed Marriott's reservation was irrelevant because "a reservation of rights is not an assertion of rights." JA1661. But the case the court cited for that proposition held only that a defendant forfeited its right to arbitrate where it had *unilaterally* reserved its right to compel arbitration in the event its motion to dismiss were denied. *See Hooper v. Advance Am., Cash Advance Ctrs. of Mo., Inc.*, 589 F.3d 917, 919, 923 (8th Cir. 2009). Here, by contrast, the parties *jointly* agreed that choice-of-law questions could be deferred, so there was no question of prejudice. And unlike arbitration clauses, which typically are invoked prior to substantive proceedings in a judicial forum, choice-of-law issues are typically addressed later at summary judgment. *See, e.g., Francis v. Allstate Ins. Co.*,

709 F.3d 362, 364, 369 (4th Cir. 2013). The district court erred in rewriting the parties' joint reservation as a forfeiture.

In short, nothing about Marriott's conduct—either before or after the filing of the operative complaint in the MDL—waived, forfeited, or in any way disavowed the class-waiver defense.

## B.    The Class-Action Waiver Is Enforceable.

The parties' class-action waiver is also enforceable. The district court held otherwise because it found that the Federal Rules of Civil Procedure ban class waivers and that the provision is "adhesive." Both holdings are incorrect.

### 1.    The Federal Rules Of Civil Procedure Do Not Bar Class-Action Waivers.

Judge Bailey held that Federal Rules of Civil Procedure 23 and 42 "leave[] no room" for "private agreements among litigants" to a standalone "waiver of consolidated or class-wide adjudication." JA1667, JA1669. Settled law says otherwise.

Class-action waivers are fully consistent with the Federal Rules. As for Rule 23, a plaintiff who has agreed not to pursue class relief cannot satisfy its requirements for certification, including: (1) that the plaintiff "may sue ... as representative parties on behalf of all members" under Rule 23(a); (2) that

the plaintiff's claims and defenses are "typical" of the class under Rule 23(a)(3); (3) that the plaintiff will "fairly and adequately protect the interests of the class" under Rule 23(a)(4); and (4) that a class action is the "superior" and "fair[]" method of resolving the parties' dispute under Rule 23(b)(3). That is why, as this Court recognized, "[c]ourts consistently resolve the import of class waivers at the certification stage—before they certify a class." *In re Marriott Int'l, Inc.*, 78 F.4th at 686. Class waivers are also consistent with Rule 42, as they do not prevent a federal court from making decisions to "consolidate," but rather render Rule 23's specific *certification* requirements unmet.

Courts therefore routinely enforce class-action waivers—including those unaccompanied by arbitration agreements—without hesitation. *See, e.g., Crews v. TitleMax of Del., Inc.*, 2023 WL 2652242, at *3-4 (M.D. Pa. Mar. 27, 2023); *Jeong v. Nexo Cap. Inc.*, 2022 WL 3590329, at *14-15 (N.D. Cal. Aug. 22, 2022); *Lindsay v. Carnival Corp.*, 2021 WL 2682566, at *3-4 (W.D. Wash. June 30, 2021); *Dimery v. Convergys Corp.*, 2018 WL 1471892, at *6 (D.S.C. Mar. 26, 2018); *Korea Wk., Inc. v. Got Cap., LLC*, 2016 WL 3049490, at *7-11 (E.D. Pa. May 27, 2016); *see also Convergys Corp. v. Nat'l Lab. Rels. Bd.*, 866 F.3d 635, 639-40 (5th Cir. 2017); *DeLuca v. Royal*

*Caribbean Cruises, Ltd.*, 244 F.Supp.3d 1342, 1347-49 (S.D. Fla. 2017); *U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247, at *3-4 (S.D.N.Y. June 25, 2015); *Palmer v. Convergys Corp.*, 2012 WL 425256, at *2-3 (M.D. Ga. Feb. 9, 2012). As some courts have noted, it "makes little sense that an arbitration agreement could take the more drastic step of entirely waiving a federal court forum, including the right to proceed collectively, but a[nother] … contract could not waive the right to proceed collectively in court while preserving the right to bring suit on an individual claim." *Mazurkiewicz v. Clayton Homes, Inc.*, 971 F.Supp.2d 682, 692 (S.D. Tex. 2013).

The district court believed its authority over "judicial administration" meant it could unilaterally annul the parties' contractual agreement not to pursue classwide relief. But the Rules Enabling Act makes clear that the Federal Rules do not, and cannot be used to "abridg[e] … a substantive right." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) (quotation marks omitted). As the Supreme Court explained in *Italian Colors*, although Rule 23 creates a mechanism for proceeding on a class basis, it does not establish a "nonwaivable" "entitlement to class proceedings." *Id.* Where, as here, parties have contracted to waive class actions, a court may not "erase that expectation" to "vindicate federal policies." *Id.*

33

The district court's holding that the parties' class-action waiver is federally barred would vitiate the settled expectations of contracting parties across the country, contrary to governing law. *See Mey v. DIRECTV, LLC*, 971 F.3d 284, 295 (4th Cir. 2020) ("As with any contract, it is not our place to disturb the parties' bargain or relieve a party of the obligations to which it agreed."). This Court should not go down that wayward path. It should enforce the parties' promise.

### 2. The Class-Action Waiver Is Not Unconscionable.

The district court also stated, without a single case citation, that the SPG Terms' class-waiver provision was "adhesive" and unfair because it appeared on the last page of the contract and under a heading that did not repeat the phrase "class actions." JA1658-1659, JA1670. This argument—so weak that plaintiffs never even raised it at class certification (so forfeited it)[5]—is foreclosed by New York law.

New York law requires that a contract be both substantively *and* procedurally unconscionable before it can be deemed unenforceable. *See*

---

[5] When Marriott opposed class certification before Judge Grimm and argued that the waiver was enforceable (under applicable New York law), JA1352-1353, plaintiffs did not contend otherwise in their reply brief, *see* JA1467. They adverted to supposed unconscionability issues only briefly at oral argument. *See supra* 11.

*Marvel Ent. Grp., Inc. v. Young Astronaut Council*, 1989 WL 129504, at *4 (S.D.N.Y. Oct. 27, 1989); *Gillman v. Chase Manhattan Bank, N.A.*, 534 N.E.2d 824, 828 (N.Y. 1988).

On substantive unconscionability, "[c]ourts applying New York law … have uniformly held that class action waivers are *not* unconscionable." *Nayal v. HIP Network Servs. IPA, Inc.*, 620 F.Supp.2d 566, 573 (S.D.N.Y. 2009) (emphasis added) (collecting New York authority).

Nor is there any procedural unconscionability here. Notwithstanding the district court's characterization of the contract as "adhesive," New York law provides that a mere "disparity in bargaining power [is] insufficient to undermine the enforceability of any contract"—including form contracts. *MacIntyre v. Moore*, 335 F.Supp.3d 402, 415 (W.D.N.Y. 2018) (collecting cases); *see Rosenfeld v. Port Auth. of N.Y. & N.J.*, 108 F.Supp.2d 156, 164 (E.D.N.Y. 2000). "[E]ven if the Agreement was a form contract offered on a 'take-it-or-leave-it' basis" and a defendant had "refused to negotiate" any of its terms, "this is not sufficient under New York law to render the provision procedurally unconscionable." *Nayal*, 620 F.Supp.2d at 571-72.

New York law instead assesses procedural unconscionability "by whether the party seeking to enforce the contract has used high pressure

tactics or deceptive language in the contract." *Filho v. Safra Nat'l Bank of N.Y.*, 2014 WL 12776165, at *10 (S.D.N.Y. Mar. 11, 2014) (quoting authority). It "prevent[s] unfair surprise and oppression" in the bargaining process. *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 249 (2d Cir. 1991) (quoting *Pierson v. Dean, Witter, Reynolds, Inc.*, 742 F.2d 334, 339 (7th Cir. 1984)). There is no suggestion of such tactics here.

The features of the clause that the district court pointed to—location of the waiver and its heading—have never been enough to find unconscionability in New York. There is no ignore-the-last-page canon of contract construction. *See In re Conifer Realty LLC (EnviroTech Servs., Inc.)*, 106 A.D.3d 1251, 1253 (N.Y. App. Div. 2013) (provision's placement on the last page of the contract did not make it unconscionable). The class-waiver provision appeared in the same font size as the rest of the Terms, in the contract's body, and on equal footing with all other terms—fully consistent with New York law. *See Coe v. Coca-Cola Co.*, 2023 WL 7524396, at *11 (W.D.N.Y. Nov. 14, 2023) (provision not unconscionable when "set out in the same font, size, and format as the rest of the Terms of Use provisions—no fine print"); *Application of Whitehaven S.F., LLC v. Spangler*, 45 F.Supp.3d 333, 351 (S.D.N.Y. 2014) (clauses not unconscionable "as those

36

clauses have the same font size and color with other clauses"), *aff'd sub nom.*
*Whitehaven S.F., LLC v. Spangler*, 633 F. App'x 544 (2d Cir. 2015).

And even if all that were not true, Judge Bailey's "observations" go
only to perceived procedural unconscionability, which—without substantive
unconscionability—is legally insufficient to hold a contract unenforceable
anyway. *See supra* 34-35. There is no legal basis to set aside the parties'
agreement as unenforceable.

## C.    The Class Waiver Is Applicable To This Dispute And Requires Reversal.

The SPG Terms' class waiver expressly applies to plaintiffs' claims.
The waiver covers "[a]ny disputes arising out of or related to the SPG
Program or these SPG Program Terms." JA1466.

The "arising out of or related to" language is "broad," and "embrace[s]
*every* dispute between the parties having a significant relationship to the
contract regardless of the label attached" to the claims. *Am. Recovery
Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 93 (4th Cir. 1996)
(emphasis added) (quoting *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile,
S.A.*, 863 F.2d 315, 321 (4th Cir. 1988)); *see Collins & Aikman Prods. Co. v.
Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995) (ruling that "arising out of or
relating to th[e] agreement" is "the paradigm of a broad clause"). It is

hornbook law that this expansive wording encompasses tort as well as contract claims. *See Am. Recovery Corp.*, 96 F.3d at 92-93 (rejecting reasoning that tort claims did not "arise out of or relate to" the contract); *see also Primex Int'l Corp. v. Wal-Mart Stores, Inc.*, 679 N.E.2d 624, 625-26 (N.Y. 1997) (holding that "broad" contract terms concerning "[a]ny and all disputes arising out of, under or in connection with" the contract applied to tort claims); *Brandle Meadows, LLC v. Bette*, 84 A.D.3d 1579, 1580-81 (N.Y. App. Div. 2011) (same).

Plaintiffs' claims plainly "aris[e] out of or relate[] to the SPG Program or the[] SPG Program Terms." JA1466. As plaintiffs appeared to embrace at class certification, their breach-of-contract claims are "governed" by the SPG Terms because the SPG Terms expressly "incorporate[]" the Privacy Statement and "constitute the entire agreement between Starwood and SPG Members." JA1466; JA1478 ("Plaintiffs assert breach of contract claims solely on behalf of SPG members, who are governed by the Privacy Statement as incorporated via the standardized Terms & Conditions of the SPG Program."). And plaintiffs' tort claims allege harm arising from the disclosure of information plaintiffs provided pursuant to the SPG program. Members booked the stays at issue (and provided personal information) as

38

part of the SPG program (to get SPG rates, to accrue and use points, to obtain upgrades, and so on), and SPG data were among the subjects of the data incident. JA530-531; JA1227-1228, JA1318. That is more than enough to establish the waiver's applicability. *See Am. Recovery Corp.*, 96 F.3d at 93; *J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 318-20 (4th Cir. 1988); *cf. Roman v. Spirit Airlines, Inc.*, 2021 WL 4317318, at *1-2 (11th Cir. Sept. 23, 2021).

Although Judge Bailey did not reach the applicability issue (and instead premised his holding on the assumption that the waiver applies to the parties' dispute), it is appropriate and important for this Court to address it on this second 23(f) appeal. Applicability is a question of law that was fully briefed on remand. This Court consistently resolves legal issues in just such circumstances to avoid "another remand" that "would be an unnecessary waste of judicial and litigant resources." *O'Reilly v. Bd. of Appeals of Montgomery Cnty.*, 942 F.2d 281, 284 (4th Cir. 1991). As this Court has put it, "since the record in this respect is fully developed, nothing would be gained by another remand for an initial decision by the district court on this issue." *Chesapeake Bay Found., Inc. v. Gwaltney of Smithfield, Ltd.*, 890 F.2d 690, 696 (4th Cir. 1989). And resolution of the applicability

issue is particularly appropriate on Rule 23(f) review, which is intended to provide expedited and efficient resolution of certification issues. *See Scott v. Fam. Dollar Stores, Inc.*, 733 F.3d 105, 110-11 (4th Cir. 2013); *see also* 16 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3931.1, Westlaw (3d ed. updated Apr. 2023). There is nothing to be gained—and only resources to be wasted—by remanding again.

Marriott timely invoked and did not forfeit the class waiver. That waiver is enforceable and applicable. This Court should reverse the recertification order.

## II.   The Certified Classes Are Not Ascertainable.

The certified classes also fail Rule 23's "threshold requirement that members of a proposed class be 'readily identifiable'"—*i.e.*, ascertainable. *EQT*, 764 F.3d at 358. Like other Rule 23 requirements, plaintiffs "must prove by a preponderance of the evidence that the class is ascertainable" to obtain certification. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015); *see EQT*, 764 F.3d at 358 (same). Neither plaintiffs nor the district court put forward an administratively feasible means of determining which prospective class members were not reimbursed and so "bore the economic burden" of their stays (as the district court defined class membership).

40

JA1234-1236, JA1240-1241. Sorting that out requires extensive individualized fact-finding and violates Rule 23.

## A.    Plaintiffs Created This Problem By Shifting Theories.

The recertified classes' ascertainability problem arises from plaintiffs' own about-face after discovery did not bear out their allegations of identity theft. In need of some theory of injury, plaintiffs pivoted at class certification to "overpayment," which necessarily turns on who footed the bill for hotel rooms rather than who booked those rooms (a universe of class members that *would* have been ascertainable via Starwood's reservation database).

But the flaw with "overpayment" is that discovery *also* revealed that the named plaintiffs had been reimbursed for the vast majority—nearly 90%—of their stays, and approximately 30% of the named plaintiffs had been reimbursed for *all* their stays. *See* Dkt. 885, Exs. 40-54; JA1345.

The district court recognized that would-be class members who had been reimbursed did not pay, so could not "overpay," and so were uninjured under plaintiffs' new theory. To avoid certifying classes comprising "large numbers of uninjured persons," *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 658 (4th Cir. 2019), the district court redefined the classes to include only "persons who bore the economic burden" of their stays—that is, people

who were never reimbursed. JA1234-1236. The court acknowledged that "[d]efining putative class members as those 'who bore the economic burden' for a hotel stay raises some concerns regarding ascertainability." JA1235.

## B. There Is No Administratively Feasible Way To Prove The Negative: Non-Reimbursement.

Those "concerns regarding ascertainability" are insurmountable. No database or set of documents can prove that a prospective class member actually belongs in the class—that is, that she paid and was not reimbursed for her stay. Proving non-reimbursement requires proving a negative: that a putative class member was never reimbursed by anyone in any form at any time.

Class certification is "inappropriate" where ascertaining membership involves the "complicated and individualized process" of proving a negative like this. *EQT*, 764 F.3d at 358-59. In *EQT*, for instance, this Court vacated certification where class membership required that individuals "never received [certain] royalties" for their properties. *Id.* at 355. Ascertaining membership would have required review of each putative class member's records, which might or might not resolve class membership. *Id.* at 358-60. Proving such a negative inherently requires extensive factfinding. *See generally Vieth v. Jubelirer*, 541 U.S. 267, 311 (2004) (Kennedy, J.,

42

concurring) ("[P]roof of a categorical negative … is a challenge in any context."); *Elkins v. United States*, 364 U.S. 206, 218 (1960) ("Since as a practical matter it is never easy to prove a negative, it is hardly likely that conclusive factual data could ever be assembled.").

This Court and courts in this Circuit have consistently vacated or denied class certification where identifying class members would require similarly extensive individualized inquiries. *See, e.g., Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 212 (4th Cir. 2024); *EQT*, 764 F.3d at 359-60; *Rhodes v. E.I. du Pont de Nemours & Co.*, 253 F.R.D. 365, 381 (S.D. W. Va. 2008); *Davis v. Cap. One, N.A.*, 2023 WL 6964051, at *12-13 (E.D. Va. Oct. 20, 2023); *Solo v. Bausch & Lomb Inc.*, 2009 WL 4287706, at *6 (D.S.C. Sept. 25, 2009); *Cuming v. S.C. Lottery Comm'n*, 2008 WL 906705, at *3 (D.S.C. Mar. 31, 2008).

So, too, here. There is no "straightforward 'yes-or-no' review of existing records to identify class members." *Kelly v. RealPage Inc.*, 47 F.4th 202, 224 (3d Cir. 2022). Reimbursement could come in different forms: through add-ons to paychecks, payments through Paypal, Venmo, other mobile apps, or petty cash. It could come from different sources: employers, clients, spouses, parents, or friends. And it could come at different times: an

43

employee could use a corporate card to make the reservation on the spot, a reimbursement could come in the next pay cycle, a family member could mail a check the next day or several months hence. The point is there is no definite set of records that can prove reimbursement didn't happen.

And that makes certification "inappropriate" because determining class membership demands "extensive and individualized fact-finding" rather than a certain, common method. *EQT*, 764 F.3d at 358-59. No administratively feasible process exists to sort through the infinite combinations of reimbursements that each of the 20 million potential class members may have received for each of their stays. There is no one-size-fits-most way to sort putative from actual members without delving into myriad, bespoke, and potentially unresolvable questions of fact. Certification under these circumstances violates Rule 23. *Id.*

### C.   Neither Plaintiffs Nor The District Court Have Overcome This Ascertainability Problem.

The district court noted that identifying "who bore the economic burden" could implicate Rule 23's ascertainability and predominance requirements. JA1235. But neither plaintiffs nor the district court proposed an administratively feasible solution.

For their part, plaintiffs re-proposed using Starwood's reservation database (the "NDS database"), as they would have done if their original identity-theft theory had merit. JA1408. But that database typically shows who booked the room; it does not show who paid. *See* JA1239, JA1241. It sometimes shows a card number, but not the cardholder's name or the payor in the case of a corporate card, and the database of course cannot illuminate whether the guest received reimbursement. *See* JA1239, JA1241; Appellee Br. 38-39 & n.17, Case No. 22-1745. Plaintiffs intimated that additional records held by Marriott could help, but there is no treasure trove of records containing what plaintiffs need.

The district court recognized these limitations, describing the database as "incomplete" and only a "starting point" to determine class membership. JA1239. But the court identified no ending point. It hypothesized plaintiffs could fill the gap with "class members' own records such as receipts and bank and credit card statements." JA1241. But, as discussed above, those records cannot prove the negative of non-reimbursement.

The district court suggested sorting out membership via self-certification or affidavits (together with the NDS database and plaintiffs'

45

own records)—apparently by a claims administrator who would resolve these issues "when putative class members actually come forward" after a trial on the merits. JA1242 (citation omitted). But that is no solution either. As a threshold matter, self-certification cannot solve a fundamental lacuna of documentary proof. *See Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 472-73 (6th Cir. 2017); *Carrera v. Bayer Corp.*, 727 F.3d 300, 309-12 (3d Cir. 2013). And the district court's proposal raises a slew of additional problems.

1. In *TransUnion LLC v. Ramirez*, the Supreme Court held that, under Article III, each class member's standing must "be supported adequately by the evidence adduced *at trial*," not after. 594 U.S. 413, 431 (2021) (emphasis added) (citation omitted). Here, that means presenting at the liability-phase trial all individualized testimony and evidence proving lack of reimbursement. So a claims administrator or other self-certification process *after* liability is a non-starter.

2. Any affidavits or similar attestation would constitute "inadmissible hearsay," so all 20 million would-be class members would have to come forward to testify—again, at trial. *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Warner Chilcott Ltd. (In re Asacol*

46

*Antitrust Litig.)*, 907 F.3d 42, 53 (1st Cir. 2018). And Marriott is entitled to a *jury* trial on this issue. *See Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 558-59 (1990); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41-42, 42 n.4 (1989); *Wooddell v. Int'l Bhd. of Elec. Workers, Loc. 71*, 502 U.S. 93, 97-98 (1991).

3. Were there any doubt about the appropriateness of self-certification or affidavits, this litigation has already revealed that they would be fundamentally unreliable. During discovery, the named plaintiffs were often unable to accurately recall whether they had paid for reservations made years ago. *See, e.g.*, JA1364 (citing JA2179, JA2183-2184 (Bittner Dep.) (could not "recall" who paid for stays); JA2165-2166 (O'Brien Dep.) (did not know who paid for two reservations); JA2149-2150 (Fishon Dep.) (could not say for certain whether he paid for a particular stay)). *See also* JA2194-2196 (Marks Dep.) (similar); JA1113 (Cullen Dep.) (similar); JA2232-2234 (Maisto Dep.) (similar). And again, no amount of supporting documentary evidence can conclusively demonstrate the reliability of a putative class member's memory. Cross-checking that a prospective class member stayed at a Marriott (by using the NDS database), as the district court envisioned, hardly begins to answer that question.

4. Self-certification violates Marriott's due process rights. The Due Process Clause entitles defendants "to challenge the proof used to demonstrate class membership." *Carrera*, 727 F.3d at 307. "[A]llowing class members to self-identify without affording defendants the opportunity to challenge class membership [would] provide[] inadequate procedural protection to defendants and implicate[] their due process rights." *Karhu v. Vital Pharms., Inc.*, 621 F. App'x 945, 948 (11th Cir. 2015) (cleaned up); *accord Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 594 (3d Cir. 2012) (use of self-certifying affidavits "would have serious due process implications").

At bottom, "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials.'" *EQT*, 764 F.3d at 358 (quoting *Marcus*, 687 F.3d at 593); *see Karhu*, 621 F. App'x at 948-49 (same). That problem is of plaintiffs' own making: They decided to peg their damages to a ninth-inning theory of injury (overpayment) that does not match the alleged wrong at the core of their complaint (data privacy). Whether described as an ascertainability or a predominance problem, the result is the same: "[A] class action is inappropriate." *EQT*, 764 F.3d at 358.

48

### III. Certification Is Improper Because Plaintiffs' Damages Model Does Not Satisfy *Comcast* and Rule 23.

The recertified classes also fail Rule 23(b)(3)'s "predominance" requirement. Plaintiffs have the burden to prove "before" certification that "damages are capable of measurement on a classwide basis," lest individual questions of injury predominate. *Comcast*, 569 U.S. at 34.

Plaintiffs' damages model suffers from a quintessential *Comcast* problem. Their expert conceded that his classwide damages model cannot scale to measure damages for all class members without a sweeping simplifying assumption: that hotel prices—in all places, at all times, and for all rooms—rise and fall at the same rate relative to each other. JA2733-2734. Absent that "co-movement" assumption, plaintiffs would need to do millions upon millions of individual calculations using vast tranches of nonexistent pricing data regarding each hotel and its local competitor set for every stay by every class member over the yearslong class period.

The problem with plaintiffs' simplifying "co-movement" assumption is that their expert admitted he never tested it. *See* JA2908. Only Marriott's expert did, and she proved it false. JA3089. The district court wrongly held that plaintiffs' model passed muster based on the court's erroneous belief that plaintiffs' expert had "adequately tested" co-movement. JA1276. Under

49

*Comcast*, plaintiffs cannot obtain certification based on an unproven—indeed, disproved—assumption that provides the lynchpin for determining damages classwide.

### A. Rule 23 Requires Courts To Subject Plaintiffs' Damages Model To "Rigorous Analysis."

Before certifying classes, "courts must conduct a 'rigorous analysis' to determine whether" plaintiffs' proposed damages model can support classwide calculation of damages. *Comcast*, 569 U.S. at 34 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). That requirement flows directly from Rule 23(b)(3): Accurate models "are essential to the plaintiffs' claim they can offer common evidence of classwide injury." *In re Rail Freight*, 725 F.3d at 253. "Common questions of fact cannot predominate where there exists no reliable means of proving classwide injury in fact." *Id.* at 252-53.

*Comcast* instructs that "it is now undisputedly the role of the district court to scrutinize the evidence *before* granting certification, even when doing so 'requires inquiry into the merits of the claim.'" *Id.* at 253 (quoting *Comcast*, 569 U.S. at 34) (emphasis added). "[T]he reliability of [a] model[] may not be deferred or deflected to a trial on the merits …. [and] instead must be shown, at this [certification] stage, to be suitably rigorous." *In re*

*Aluminum Warehousing Antitrust Litig.*, 336 F.R.D. 5, 49 (S.D.N.Y. 2020) (citing *Comcast*, 569 U.S. at 35). *Comcast* thus directs courts to delve into the intricacies of the plaintiffs' damages model, particularly the model's ability to measure damages for the entire class. *See* 569 U.S. at 36-38; *In re Rail Freight*, 725 F.3d at 251. In so doing, "a court must examine whether any statistical assumptions made in [the damages model] are reasonable." *Brown v. Nucor Corp.*, 785 F.3d 895, 904 (4th Cir. 2015).

In this way, the *Comcast* analysis is distinct from the *Daubert* analysis. *Daubert* asks judges to conduct a "preliminary assessment" of whether expert testimony is sufficiently reliable to be "admissible" for consideration under Federal Rule of Evidence 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 592-93 (1993). *Comcast*, by contrast, asks a more demanding question: whether plaintiffs have actually "*establish*[*ed*] that damages could be measured on a classwide basis" such that individualized damages do not predominate. *Comcast*, 569 U.S. at 34 n.4; *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (explaining that the "party seeking class certification must affirmatively … prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." (citing Fed. R. Civ. P. 23(a))). Put otherwise, *Daubert* admissibility may be

51

necessary for a damages model to meet Rule 23, but it is not sufficient to satisfy *Comcast*.

## B. Plaintiffs' Damages Model Is Dependent On Their Assumption Of Co-Movement.

To measure "overpayment," plaintiffs' model must calculate the differential between what a class member actually paid for each stay and what she would have paid in the counterfactual world where she knew about the data incident. JA1257-1258. Plaintiffs acknowledge that they cannot measure that delta classwide without making a critical assumption: co-movement.

Plaintiffs' initial attempt at a damages model without that assumption could not calculate classwide damages. Dr. Prince's opening report represented that he would individually calculate the "overpayment" of every single stay by every single class member. JA2907; JA1335-1336. He proposed collecting all competitor hotel data for every stay on every date during the class period. JA1335-1336. But that data—millions of historical hotel prices for each market about each hotel and all of its competitors—is not available. *See* JA1205-1207; JA1990. And even if it were, this method would require millions upon millions of computations. JA2907. Dr. Prince

conceded as much. JA1335-1336. And the district court agreed it would entail an "enormous number of calculations." JA1205.

So Dr. Prince changed his tune. In his rebuttal report, he suddenly claimed to be able to aggregate damages—that is, to calculate damages for every stay within the class period using a single set of inputs, market data from a particular Marriott hotel and its competitors at one random point in time. JA2733-2734.

Dr. Prince's ability to scale his model required a sweeping assumption: that the relative prices of all hotels always move in sync. JA2733-2734. Using this assumption of co-movement, Dr. Prince asserted that because prices supposedly always rose and fell together, he could compare the price of *one* Starwood room to its competitors on a *single* random date and assume that the "overpayment" would be the same for *every* stay at that hotel on *all* dates of the class period.[6] No matter what kind of room (double queen, king, suite, etc.), when a room was booked (peak season, off-season, etc.), what

---

[6] At his deposition, Dr. Prince said that his model might require a "few" runs for each hotel, which the district court concluded was manageable. JA1206. But if Dr. Prince's co-movement premise is wrong, then he would need to run his model millions of times, not a "few" times—a process that is unworkable. *See* JA1277; JA1206.

kind of rate (rack rate, group rate, senior rate, etc.), what kind of package (breakfast included, parking included, etc.), what terms the rate included (refundable, non-refundable, etc.), or anything else (holidays, conferences, weddings, construction, etc.). Dr. Prince acknowledged that his damages model would be unable to measure damages for the whole class without his co-movement assumption.

But Dr. Prince also acknowledged that he never tested that co-movement assumption. Although he had a data set containing Starwood's prices and those of its competitors, he did not examine whether those prices actually co-moved; he simply assumed that they did. *See* JA2908 (Dr. Prince acknowledging that he did not "check" co-movement). Dr. Prince admitted that the totality of his support for the assumption was a single "[w]orking [p]aper," which examined "seven [unnamed] luxury hotels operating in a tightly defined local area" from 2010 to 2013. Sungjin Cho et al., *Optimal Dynamic Hotel Pricing* 16, 18-19 (2018);[7] JA2733-2734 (citing Cho et al., *supra*, at 1, 23). That timing precedes the class period, *see* JA1236, and the article did not purport to address either Marriott's hotel pricing or hotel

---

[7] Available at https://economics.sas.upenn.edu/index.php/system/files/2018-04/hp_final_update.pdf.

pricing in markets around the country, *see* Cho et al., *supra*, at 1 (stating that the purpose of the study was to "formulate and estimate a dynamic model of optimal pricing by hotel 0").

### C. Plaintiffs' Debunked Co-Movement Assumption Fails *Comcast*.

Dr. Prince's model fails *Comcast* because plaintiffs never established that their model was capable of determining classwide damages. In holding otherwise, the court relied on its prior decision that Dr. Prince's model satisfied *Daubert*'s admissibility standard. JA1276. It then suggested that Dr. Prince had "adequately tested his model using bellwether plaintiffs' data" and "demonstrated how his model would precisely calculate damages for each class member once it is applied classwide." JA1276. The court ignored that Marriott's expert had disproved co-movement. And the court suggested that Dr. Prince's assumption could be justified by citation to a lone academic article. The court went on to state that if co-movement were ultimately disproven (such that damages could not be measured classwide), the court could simply decertify the classes later. JA1277. Every aspect of that assessment is wrong.

1. At the outset, in addressing Marriott's *Comcast* argument against class certification, the district court answered the wrong question. The court

cited its *Daubert* decision—which had found the model admissible—rather than considering whether plaintiffs had ultimately "*establish*[*ed*] that damages could be measured on a classwide basis," as *Comcast* requires. *Comcast*, 569 U.S. at 32 n.4 (emphasis added). The court never conducted Rule 23's "rigorous analysis" to ensure that individual damages issues do not predominate before certifying a class.[8]

2. The district court was wrong to suggest that Dr. Prince had tested his co-movement assumption as *Comcast* commands. To be sure, Dr. Prince ran his model, but he did so *assuming* that co-movement was correct. *See* JA2908. Asserting the very assumption on which the scalability of a damages model depends does not "test" it; otherwise "any method of measurement [would be] acceptable so long as it can be applied classwide, no matter how arbitrary." *Comcast*, 569 U.S. at 36. That "would reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Id.*

---

[8] To the extent plaintiffs argue that any underpinnings of the district court's *Comcast* decision implicate the district court's *Daubert* decision that the testimony was admissible, this Court is also entitled to review the *Daubert* ruling. *See Scott*, 733 F.3d at 110-11 (holding that, on Rule 23(f) appeal, Fourth Circuit has jurisdiction to review orders that are "'inextricably intertwined'" with the certification decision).

The D.C. Circuit's decision in *In re Rail Freight* is instructive. There, plaintiffs argued that their model satisfied *Comcast* because defendants had not shown the model did not work on a classwide basis. The D.C. Circuit rejected that argument, explaining plaintiffs "misapprehend their burden"; they cannot submit a "questionable model" they did not verify and assume it works unless proven otherwise. 725 F.3d at 254. That is exactly what plaintiffs did here. Dr. Prince never verified his assumption.

3. The inadequacy of plaintiffs' model is even clearer here because Marriott's expert *did* test plaintiffs' co-movement assumption and proved it was false—that is, plaintiffs' entire basis for claiming they could measure damages on behalf of the class was wrong. JA3089. Using the data from the six markets Dr. Prince studied, Dr. Tucker examined the relative prices of ten hotels across all six markets. JA3089. That data showed hotels' relative price ranking changed frequently over time. JA3089.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████



If co-movement were correct, this data would have shown that the most expensive hotel remained the most expensive, by the same amount, even as the overall price rose and fell. The same would be true for the second most expensive, all the way down to the least. Instead, Dr. Tucker observed that every hotel Dr. Prince used in his report changed relative rank at least once when she looked at dates other than Dr. Prince's randomly selected ones. JA3089. Dr. Tucker was the only expert to test the veracity of the co-movement assumption, so her testimony stands unrebutted. On that record—with a model whose scalability depended on a key assumption that

was untested by plaintiffs and disproved by defendants—no classes can be certified consistent with *Comcast*.

4. Against Dr. Prince's failure to test co-movement and Dr. Tucker's demonstration that Marriott's hotel prices did not co-move, plaintiffs' model cannot be saved by the lone academic article that Dr. Prince cited. *See supra* 54. For one, pointing to an article does not prove a model works where that model has been tested and found inadequate.

And even on its own terms, the article does not say co-movement is a valid assumption for all markets across all times (the proposition that Dr. Prince was assuming). As noted, the scope of the article was much more modest: It looked only at the pricing of seven unnamed luxury hotels in a single unidentified market prior to the start of the class period. Cho et al., *supra*, at 16, 18-19. It said nothing about non-luxury hotels in other markets at other times. What's more, the article did not even find that prices co-moved in the limited circumstances it addressed. The authors instead concluded that co-movement was *not* an optimal pricing strategy, especially in the routine scenario when a hotel sells out. *Id.* at 3. Dr. Prince's invocation of the study is not enough to prove his model worked under *Comcast*.

5. The district court was wrong that it could certify now and verify plaintiffs' classwide damages model and its basic assumptions later. Plaintiffs must "affirmatively demonstrate" a reliable basis for measuring classwide damages *before* certification. *Comcast*, 569 U.S. at 33-34. And the district court must test any underlying "assumptions" at that stage. *Brown*, 785 F.3d at 904. As the D.C. Circuit put it: "No damages model, no predominance, no class certification." *In re Rail Freight*, 725 F.3d at 253.

## IV. The District Court Erred As A Matter Of Law In Certifying Issue Classes Under Rule 23(c)(4).

Finally, the district court erred by certifying "issue only" negligence classes limited to duty and breach—as Accenture will address in its own brief. Rule 23(c)(4) is a management tool that allows courts to certify liability-only classes; it does not allow courts to circumvent Rule 23's requirements or to certify classes with large numbers of uninjured members.

\* \* \*

In sum, the district court's recertification order fails at every step of Rule 23's "rigorous" requirements. *Dukes*, 564 U.S. at 351. Plaintiffs fail Rule 23's "threshold requirement" that class members be ascertainable because they have no "administratively feasible" means of sorting reimbursed from paying guests. *EQT*, 764 F.3d at 358. Plaintiffs fail Rule 23(a)'s requirement

that they can "sue … as representative parties on behalf of all members" because every single one of them signed a contract agreeing not to bring class claims. Because of that same class-action waiver, plaintiffs fail Rule 23(b)(3)'s requirement that class litigation be "superior" to other means of resolving the parties' dispute. And plaintiffs fail Rule 23(b)(3)'s "demanding" "predominance" requirement because they lack a model that can calculate damages classwide per *Comcast*. Each of these deficiencies, alone, is fatal. Together they show these classes are doomed.

## CONCLUSION

The class certification order should be reversed.

Dated: March 19, 2024

Respectfully submitted,

*/s/ Matthew S. Hellman*

Daniel R. Warren
Lisa M. Ghannoum
Dante A. Marinucci
Kyle T. Cutts
BAKER & HOSTETLER LLP
127 Public Square
Suite 200
Cleveland, OH 44114
(216) 621-0200

Gilbert S. Keteltas
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW
Suite 200
Washington, DC 20036
(202) 861-1530

Lindsay C. Harrison
Matthew S. Hellman
Elizabeth B. Deutsch
Mary E. Marshall
Emanuel Powell III
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000
mhellman@jenner.com

*Counsel for Defendant-Appellant Marriott International, Inc.*

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 12,224 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief was prepared in 14-point Century Expanded LT Standard font.

Dated:  March 19, 2024                    _/s/ Matthew S. Hellman_____

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2024, I electronically filed public and sealed versions of the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system. I further certify that all parties to this case are registered CM/ECF users and that service of the public brief will be accomplished by the CM/ECF system.

I also certify that on March 19, 2024, I electronically served the sealed brief upon the following counsel via email:

Craig S. Primis, P.C.
Devin S. Anderson
Emily M. Long
Joseph C. Schroeder
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, NW
Washington, DC 20004
craig.primis@kirkland.com
devin.anderson@kirkland.com

James J. Pizzirusso
HAUSFELD LLP
888 16th Street, NW
Suite 300
Washington, DC 20006
jpizzirusso@hausfeldllp.com

Steven M. Nathan
HAUSFELD LLP
33 Whitehall Street

Amy E. Keller
DiCELLO LEVITT LLP
Ten North Dearborn Street
Sixth Floor
Chicago, IL 60602
akeller@dicellolevitt.com

Justin J. Hawal
DiCELLO LEVITT LLP
8160 Norton Parkway
Mentor, OH 44060
jhawal@dicellolevitt.com

Andrew N. Friedman
Douglas J. McNamara
COHEN MILSTEIN SELLERS
  & TOLL PLLC
1100 New York Avenue, NW
Suite 500
Washington, DC 20005

14th Floor
New York, NY 10004
snathan@hausfeld.com

Jason L. Lichtman
Sean A. Petterson
LIEFF CABRASER HEIMANN
 & BERNSTEIN LLP
250 Hudson Street
8th Floor
New York, NY 10013
jlichtman@lchb.com
spetterson@lchb.com

afriedman@cohenmilstein.com
dmcnamara@cohenmilstein.com

Claire L. Torchiana
COHEN MILSTEIN SELLERS
 & TOLL PLLC
88 Pine Street
14th Floor
New York, NY 10005
ctorchiana@cohenmilstein.com

Dated: March 19, 2024          */s/ Matthew S. Hellman*