**Nos. 24-1064(L), 24-1065(M)**

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT
————————

PETER MALDINI, *et al.*,

*Plaintiffs-Appellees,*

v.

MARRIOTT INTERNATIONAL, INCORPORATED,

*Defendant-Appellant.*

————————

PETER MALDINI, *et al.*,

*Plaintiffs-Appellees,*

v.

ACCENTURE LLP,

*Defendant-Appellant.*

————————

On Appeal from the United States District Court for the District of
Maryland, No. 8:19-md-02879, Hon. John P. Bailey

————————

## BRIEF FOR THE CHAMBER OF COMMERCE OF THE
## UNITED STATES OF AMERICA AS *AMICUS CURIAE* IN
## SUPPORT OF DEFENDANTS-APPELLANTS
————————

Jennifer B. Dickey
Jordan L. Von Bokern
U.S. CHAMBER
LITIGATION CENTER
1615 H Street NW
Washington, DC 20062

*Counsel for the Chamber of
Commerce of the United States
of America*

Ashley C. Parrish
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
aparrish@kslaw.com

Anne M. Voigts
KING & SPALDING LLP
601 South California Avenue, Ste. 100
Palo Alto, CA 94304
(650) 422-6700
avoigts@kslaw.com

March 26, 2024

*Counsel for Amicus Curiae*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

Nos. 24-1064, 24-1065    Caption: Maldini v. Marriott International, Inc.; Maldini v. Accenture LLP

Pursuant to FRAP 26.1 and Local Rule 26.1,

The Chamber of Commerce of the United States of America
(name of party/amicus)

who is _____ amicus curiae _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.   Does party/amicus have any parent corporations?    ☐ YES ☑ NO
     If yes, identify all parent corporations, including all generations of parent corporations:

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
     If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                    ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)     ☐YES ☐NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

     N/A

6.   Does this case arise out of a bankruptcy proceeding?                     ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Anne M. Voigts                          Date:      03/26/2024

Counsel for: Amicus Curiae

Print to PDF for Filing

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................ii

INTEREST OF *AMICUS CURIAE*....................................................1

INTRODUCTION ............................................................................2

ARGUMENT ..................................................................................6

I.  The District Court Improperly Failed to Enforce the Class-
    Action Waivers ...................................................................7

II.  The Classes Are Not Ascertainable ..............................15

III. The Court Erroneously Certified "Element-Only" Classes ..........19

IV. Improper Class Certification Severely Burdens Businesses
    and the Economy ..............................................................27

CONCLUSION ............................................................................30

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ........................................................................9, 10

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) .................................................................... 24

*Archer v. Carnival Corp. & PLC*,
  2020 WL 6260003 (C.D. Cal. Oct. 20, 2020) ........................................ 8

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) .................................................................... 27

*Bartels v. Saber Healthcare Grp., LLC*,
  2020 WL 6173566 (E.D.N.C. Oct. 21, 2020)........................................ 21

*Black v. Occidental Petroleum Corp.*,
  69 F.4th 1161 (10th Cir. 2023) ........................................................ 23

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) .................................................................... 27

*Branch v. GEICO*,
  323 F.R.D. 539 (E.D. Va. 2018) ...................................................... 21

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
  155 F.3d 331 (4th Cir. 1998) .......................................................... 19

*Burlington N. R.R. v. Woods*,
  480 U.S. 1 (1987) ....................................................................... 10

*Califano v. Yamasaki*,
  442 U.S. 682 (1979) ..................................................................... 9

*Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*,
  91 F.4th 202 (4th Cir. 2024) .......................................................... 17

*Castano v. Am. Tobacco Co.*,
  84 F.3d 734 (5th Cir. 1996)........................................................20, 24

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ............................................................ 7, 17, 19, 26

*Convergys Corp. v. NLRB*,
  866 F.3d 635 (5th Cir. 2017) ................................................................ 10

*Crews v. TitleMax of Del., Inc.*,
  2023 WL 2652242 (M.D. Pa. Mar. 27, 2023) ...................................... 10

*Cruson v. Jackson Nat'l Life Ins. Co.*,
  954 F.3d 240 (5th Cir. 2020) ................................................................ 13

*Ealy v. Pinkerton Gov't Servs., Inc.*,
  514 F. App'x 299 (4th Cir. 2013) ......................................................... 21

*EQT Prod. Co. v. Adair*,
  764 F.3d 347 (4th Cir. 2014) .................................................... 4, 5, 16, 18

*Gen. Tel. Co. v. Falcon*,
  457 U.S. 147 (1982) ................................................................................ 7

*Groussman v. Motorola, Inc.*,
  2011 WL 5554030 (N.D. Ill. Nov. 15, 2011) ....................................... 16

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ................................................ 5, 18, 23, 24

*H&T Fair Hills, Ltd. v. All. Pipeline L.P.*,
  76 F.4th 1093 (8th Cir. 2023) .............................................................. 14

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) .............................................................................. 19

*Hammond v. Powell*,
  462 F.2d 1053 (4th Cir. 1972) .............................................................. 17

*Harris v. Med. Transp. Mgmt., Inc.*,
  77 F.4th 746 (D.C. Cir. 2023) .............................................................. 20

*In re Allstate Ins. Co.*,
  400 F.3d 505 (7th Cir. 2005) ............................................................... 23

iii

*In re Checking Acct. Overdraft Litig.*,
   780 F.3d 1031 (11th Cir. 2015)........................................................15

*In re Hydrogen Peroxide Antitrust Litig.*,
   552 F.3d 305 (3d Cir.), *as amended* (Jan. 16, 2009) ...........................6

*In re Marriott Int'l, Inc.*,
   78 F.4th 677 (4th Cir. 2023) .................................................5, 8, 14, 18

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
   341 F.R.D. 128 (D. Md. 2022) ........................................................18

*In re May*,
   595 B.R. 894 (Bankr. E.D. Ark. 2019)..............................................11

*In re Nassau Cnty. Strip Search Cases*,
   461 F.3d 219 (2d Cir. 2006) ...........................................................23

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   2011 WL 1753784 (N.D. Cal. May 9, 2011) .....................................14

*In re Titanium Dioxide Antitrust Litig.*,
   962 F. Supp. 2d 840 (D. Md. 2013)..................................................14

*Kaspers v. Comcast Corp.*,
   631 F. App'x 779 (11th Cir. 2015) ....................................................8

*Krakauer v. Dish Network, L.L.C.*,
   925 F.3d 643 (4th Cir. 2019)..........................................................5, 7

*Lindsay v. Carnival Corp.*,
   2021 WL 2682566 (W.D. Wash. June 30, 2021) ................................8

*Lombardi v. DirecTV, Inc.*,
   549 F. App'x 617 (9th Cir. 2013) ....................................................15

*Marcus v. BMW of N. Am. LLC*,
   687 F.3d 583 (3d Cir. 2012) ....................................................6, 16, 27

*Martin v. Behr Dayton Thermal Prods. LLC*,
   896 F.3d 405 (6th Cir. 2018)..........................................................23

*Molock v. Whole Foods Mkt. Grp., Inc.*,
   952 F.3d 293 (D.C. Cir. 2020) ............................................................ 13

*Morgan v. Sundance, Inc.*,
   596 U.S. 411 (2022) .......................................................................... 12

*Morlan v. Univ. Guar. Life Ins. Co.*,
   298 F.3d 609 (7th Cir. 2002) ............................................................. 13

*Moser v. Benefytt, Inc.*,
   8 F.4th 872 (9th Cir. 2021) ............................................................... 13

*Murphy v. Smith*,
   138 S. Ct. 784 (2018) ....................................................................... 25

*Quicken Loans Inc. v. Alig*,
   737 F.3d 960 (4th Cir. 2013) ............................................................ 13

*Ranzy v. Extra Cash of Tex., Inc.*,
   2011 WL 13257274 (S.D. Tex. Oct. 14, 2011) ..................................... 8

*Rivera v. Exeter Fin. Corp.*,
   829 F. App'x 887 (10th Cir. 2020) .................................................... 16

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) .......................................................................... 10

*Smith v. Bayer Corp.*,
   564 U.S. 299 (2011) .......................................................................... 13

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ............................................................................ 9

*Taylor v. Sturgell*,
   553 U.S. 880 (2008) .......................................................................... 17

*Thorogood v. Sears, Roebuck & Co.*,
   547 F.3d 742 (7th Cir. 2008) ............................................................ 12

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) .................................................................... 21, 22

*U1it4Less, Inc. v. FedEx Corp.*,
  2015 WL 3916247 (S.D.N.Y. June 25, 2015) ..................................... 11

*United States v. Olano*,
  507 U.S. 725 (1993) ........................................................................ 12

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ............................................................ 23

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ................................................................. *passim*

## Statutes & Rules

28 U.S.C. § 1332 .............................................................................. 25

28 U.S.C. § 2072 ................................................................................ 9

Fed. R. Civ. P. 23 ..................................................................... *passim*

## Other Authorities

1 McLaughlin on Class Actions (20th ed.) .......................................... 16

1 Newberg and Rubenstein on Class Actions (6th ed.) ......................... 16

2 Newberg and Rubenstein on Class Actions (6th ed.) ......................... 20

Beisner, John H., et al.
  U.S. Chamber of Commerce Inst. for
  Legal Reform, Unfair, Inefficient, Unpredictable:
  Class Action Flaws and the Road to Reform (Aug. 2022),
  *available at* http://bit.ly/3NvDDkA ........................................... *passim*

Carlton Fields,
  2024 Class Action Survey,
  *available at* https://tinyurl.com/4r63bw6n ..................................... 27

CFPB,
  Arbitration Study: Report to Congress (Mar. 2015),
  *available at* https://tinyurl.com/34c9mdw8 ..................................... 12

Fitzpatrick, Brian T.
    *An Empirical Study of Class Action Settlements*
    *and Their Fee Awards*, 7 J. Empirical Legal Stud. 811 (2010)..........27

U.S. Chamber of Commerce Inst. for Legal Reform,
    Do Class Actions Benefit Class Members?:
    An Empirical Analysis of Class Actions (Dec. 11, 2013),
    *available at* https://tinyurl.com/3zk65yuk ....................................12, 28

## INTEREST OF *AMICUS CURIAE*[1]

The Chamber of Commerce of the United States of America is the world's largest business federation. It directly represents approximately 300,000 members and indirectly the interests of more than three million companies and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus briefs in cases, like this one, that raise issues of concern to the nation's business community.

The Chamber's members and their subsidiaries include businesses that are often targeted in class actions. The Chamber is thus deeply familiar with class-action litigation both from the perspective of individual defendants in class actions and from a more global perspective. Because class certification creates immense pressure to settle even unmeritorious claims, the Chamber has a significant interest

---

[1] No counsel for a party authored this brief in whole or in part and no entity or person, other than *amicus*, its members, or its counsel, made a monetary contribution intended to fund its preparation or submission. All parties consented to the filing of this brief. Fed. R. App. P. 29(a)(2).

in ensuring that courts enforce contractual waivers and undertake the rigorous analysis Rule 23 requires before they allow a case to proceed as a class action, not after. Faithfully enforcing Rule 23 is essential not only for the Chamber's members, but also for the customers, employees, and other businesses that depend on them.

## INTRODUCTION

In the words of Yogi Berra, this case is "déjà vu all over again." After this Court vacated the district court's earlier class-certification order, the district court issued a second order that is, if anything, even less defensible than the first. Indeed, the order turns Rule 23 on its head. Data-breach cases are often resolved through bellwether trials precisely because they are *not* well-suited for class litigation. Here, however, plaintiffs tried to avoid individual litigation by arguing that customers as a class would have paid less for their hotel rooms had Starwood disclosed its data-security issues. Based on that far-fetched theory, they convinced the district court to grant certification, even though customers had waived their rights to participate in a class action, their theory requires extensive individualized fact-finding to determine who is in the

class, and the action will not resolve essential elements of plaintiffs'
negligence claims.

Reversal and remand are warranted for (at least) three reasons.

*First*, despite this Court's holding that the district court erred by
certifying classes without adequately considering the parties' class-action
waivers, on remand the district court "respectfully disagree[d]." JA1661.
It proceeded to disregard the fact that every single putative class member
had expressly agreed to resolve "[a]ny disputes … individually without
any class action," JA1659 (quotation marks omitted), and certified some
of the largest consumer-data classes to date on the grounds that Marriott
had somehow waived its class-action defense by participating in an MDL
with a bellwether process. JA1660-1662. That result cannot be justified.
As an initial matter, Marriott preserved and repeatedly asserted its
class-waiver defense. Rule 23 does not create an entitlement for would-
be plaintiffs to proceed in a class action, and, as courts across the country
have recognized, class-action waivers are appropriately enforced because
nothing about them is inherently unfair.

The district court here erroneously concluded that Marriott had
waived its ability to enforce its class-action waivers by participating in

3

multi-district litigation. Ratifying that error will deter parties from participating in multi-district litigation for fear that doing so will inadvertently waive critical defenses. That in turn may make parties reluctant to agree to multi-district litigation, even though, in the right circumstances, it can reduce litigation costs and avoid duplicative discovery and wasted time and effort on the part of the parties and the courts. And that in turn will harm businesses and consumers alike.

*Second*, even though the district court recognized that any putative class member who was reimbursed for his or her hotel stay suffered no injury under plaintiffs' theory of harm, JA1234-1235, it certified the class anyway. In so doing, it tried to overcome the problem that plaintiffs' theory sweeps in large numbers of uninjured customers by limiting the classes to only customers who actually "bore the economic burden" of their stays. But in trying to solve one problem, it created another: There is no administratively feasible way to determine which customers were or were not reimbursed for their stays.

Unascertainable classes like these violate Rule 23's requirement that the members of a proposed class be readily identifiable. *See EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). Because "class

litigation should not move forward when a court cannot identify class members without 'extensive and individualized fact-finding or mini-trials,'" *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (quoting *Adair*, 764 F.3d at 358), the classes the district court certified fail before they even get out of the gate.

*Third*, despite both this Court and the district court recognizing that "issue-class litigation … would leave important elements and issues unresolved," *In re Marriott Int'l, Inc.*, 78 F.4th 677, 684 (4th Cir. 2023), on remand the district court certified separate "issue" classes containing millions of uninjured individuals who lack standing. It did so even though those classes will not resolve liability for a single class member's individual claims.

This Court has previously declined to resolve whether an entire cause of action must meet Rule 23(b)'s requirements for certification of an issues class to be appropriate. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 444-45 (4th Cir. 2003). The Court should take this opportunity to hold that it must. The district court's contrary approach is inconsistent with the structure of Rule 23, raises serious Article III concerns, and allows plaintiffs to disassemble nearly any claim so that

class certification becomes the rule, rather than the appropriately narrow exception.

These errors matter because class certification is not merely "a game-changer," but "often the whole ballgame." *Marcus v. BMW of N. Am. LLC*, 687 F.3d 583, 591 n.2 (3d Cir. 2012). The district court's vastly overbroad approach to class certification will lead to immense pressure on businesses to settle even frivolous claims, leaving them with no choice but to pass their litigation and settlement costs onto consumers, resulting in harm to the economy as a whole. That result serves no one's interests— not the parties, not the courts, and not the consumers who will ultimately bear the burden of those increased costs. This Court should enforce the requirements of Rule 23 and reverse the district court's class certification order.

## ARGUMENT

"[T]he requirements set out in Rule 23 are not mere pleading rules." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir.)*, as amended* (Jan. 16, 2009); *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Accordingly, "[a]ctual, not presumed[,] conformance" with Rule 23 requirements is essential, *Gen. Tel. Co. v. Falcon*, 457 U.S.

147, 160 (1982), and a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). The Rule "does not set forth a mere pleading standard." *Id.* Rather, a party must be prepared to prove that it can satisfy both Rule 23(a) and at least one of the provisions of Rule 23(b) through evidentiary proof. *Id.*; *see also Krakauer,* 925 F.3d at 654.

The district court's decision here failed to hold plaintiffs to their burden and improperly granted class certification for (at least) three critical reasons. First, the district court failed to enforce binding class-action waivers. Second, it certified classes that are not ascertainable without extensive individual fact-finding. Third, the district court improperly certified "elements" only classes when plaintiffs' claims do not satisfy the requirements of Rule 23. The consequences of those errors, if left uncorrected, will sweep far beyond this case, to the detriment of companies and consumers alike.

## I.    The District Court Improperly Failed to Enforce the Class-Action Waivers.

This case should never have been certified as a class action because all of the class members expressly waived any right to participate in class litigation. As this Court recognized in its earlier decision, "the time to

address a contractual class waiver is before, not after, a class is certified. … Courts consistently resolve the import of class waivers at the certification stage—before they certify a class, and usually as the first order of business." *In re Marriott Int'l,* 78 F.4th at 686; *Kaspers v. Comcast Corp.*, 631 F. App'x 779, 784 (11th Cir. 2015) (per curiam) ("[B]ecause we have concluded that the class-action waiver was valid, the district court did not need to consider the requirements for class certification under Rule 23."); *Archer v. Carnival Corp. & PLC*, 2020 WL 6260003, at *4, *8 (C.D. Cal. Oct. 20, 2020) (same); *Ranzy v. Extra Cash of Tex., Inc.*, 2011 WL 13257274, at *8 (S.D. Tex. Oct. 14, 2011) (same); *Lindsay v. Carnival Corp.*, 2021 WL 2682566, at *4 (W.D. Wash. June 30, 2021) (denying the plaintiffs' motion for class certification as barred by class waivers). In refusing to enforce those waivers here, the district court erred for two reasons, each of which has important implications for other putative class actions and for parties' ability to enforce contractual agreements.

*First*, the district court erroneously held that stand-alone class-action waivers are unenforceable because they impermissibly require a court to "ignore the provisions of Rule 23 of the Federal Rules of Civil

Procedure." JA1667-1670. But nothing in Rule 23 or any other federal rule prevents parties from voluntarily relinquishing their ability to participate in a class action. Class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Wal-Mart*, 564 U.S. at 348 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). As result, nothing prevents parties from agreeing to litigate their disputes through individual litigation, and not class actions.

The district court's contrary conclusion cannot be squared with the basic principle that Rule 23 does not establish any entitlement to class proceedings, let alone one the parties cannot contract away. *See Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) ("Nor does congressional approval of Rule 23 establish an entitlement to class proceedings for the vindication of statutory rights."); *see also generally Stolt-Neilsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010) (emphasizing parties' rights to limit by agreement the procedures followed for resolving disputes). Rule 23 could not have established an entitlement to the class action procedure without violating the Rules Enabling Act. 28 U.S.C. § 2072; *Burlington N. R.R. v. Woods*, 480 U.S. 1,

5 (1987). And even if Rule 23 could, it did not because there is "no evidence of such an entitlement in any event." *Am. Express Co.,* 570 U.S. at 234. Rule 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co.*, 570 U.S. at 234. Moreover, "there is no logical reason to distinguish a waiver in the context of an arbitration agreement from a waiver in the context of any other contract." *Convergys Corp. v. NLRB*, 866 F.3d 635, 639 (5th Cir. 2017) (cleaned up).

The district court reached the contrary conclusion only through a misapplication of *Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010), and its progeny. *Shady Grove* invalidated a state statutory attempt to override Rule 23, concluding that a state legislature's attempt to change federal class action procedures is preempted. *Shady Grove* never addressed—let alone categorically rejected—private contractual agreements to waive class action relief. *Crews v. TitleMax of Del., Inc.*, 2023 WL 2652242, at *4 (M.D. Pa. Mar. 27, 2023) ("The waiver of a right by an individual is not the same thing as the unilateral destruction of a right by statute."). Respecting the parties' "valid and voluntary agreement to waive class actions" is "fully

consonant with … *Shady Grove*[.]" *In re May*, 595 B.R. 894, 903 (Bankr. E.D. Ark. 2019); *see U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247, at *4 (S.D.N.Y. June 25, 2015).

The court's prohibition on standalone class-action waivers leaves both businesses and consumers worse off, with fewer choices for dispute resolution. Businesses face the choice of coupling all class-action waivers with arbitration clauses or not having them at all. Consumers who might prefer litigating their rights individually, rather than in class actions where they have less direct involvement, are left without that option too. *See* John H. Beisner et al., U.S. Chamber of Commerce Inst. for Legal Reform, Unfair, Inefficient, Unpredictable: Class Action Flaws and the Road to Reform at 3, 44 (Aug. 2022) ("Unfair, Inefficient, Unpredictable"), *available at* http://bit.ly/3NvDDkA (noting that absent class members typically have virtually no control over their claims and very little incentive to monitor ongoing litigation, essentially giving class action attorneys carte blanche to run the show). That is so even though they may have good reason not to want to pursue their rights through a class action. *See* U.S. Chamber of Commerce Inst. for Legal Reform, Do Class Actions Benefit Class Members?: An Empirical Analysis of Class Actions

1-2 (Dec. 11, 2013), *available at* https://tinyurl.com/3zk65yuk (noting that class members often recover little in class actions); CFPB, Arbitration Study: Report to Congress § 6.2.2 (Mar. 2015), *available at* https://tinyurl.com/34c9mdw8 (out of a sample of 562 cases, only 13% of resolved class action lawsuits resulted in some type of benefit to class members); *see also Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 744-45 (7th Cir. 2008) (Posner, J.) (noting the "community of interest between class counsel, who control the plaintiff's side of the case, and the defendants. ... The judge ... is charged with responsibility for preventing the class lawyers from selling out the class, but it is a responsibility difficult to discharge when the judge confronts a phalanx of colluding counsel.").

*Second*, the court suggested that Marriott relinquished its right to enforce those waivers based on its precertification conduct. That's wrong too. Waiver "is the intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Concluding on this record that Marriott relinquished its rights—and that it did so intentionally—would set a dangerous and unwarranted precedent.

Marriott could not have intentionally relinquished its rights before class certification. As courts have long held, "[a]n unnamed member of a proposed but uncertified class is not a party to the litigation." *Quicken Loans Inc. v. Alig*, 737 F.3d 960, 966 (4th Cir. 2013); *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (rejecting "novel and surely erroneous argument that a nonnamed class member is a party to the class action litigation *before the class is certified*." (emphasis in original) (cleaned up)); *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021) (pre-certification, class actions "include[] only the claims of the named plaintiff" (cleaned up)); *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 250 (5th Cir. 2020) (same); *Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 297 (D.C. Cir. 2020); *Morlan v. Univ. Guar. Life Ins. Co.*, 298 F.3d 609, 616 (7th Cir. 2002). Accordingly, Marriott's decision to litigate against the named plaintiffs in MDL proceedings cannot be deemed an intentional relinquishment of its right to enforce class-action waivers against putative class members.

The Eighth Circuit recently recognized as much, finding no waiver where the defendant moved to compel arbitration after class certification because a motion before certification "would have been a motion to bind

parties who were not yet part of the case." *H&T Fair Hills, Ltd. v. All. Pipeline L.P.*, 76 F.4th 1093, 1100 (8th Cir. 2023). Just as defendants cannot enforce arbitration rights against nonparties until the class-certification stage, defendants also cannot relinquish those rights until then. *See In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 853 (D. Md. 2013); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) (same). This principle applies with even greater force to standalone class waivers because, while a defendant could theoretically enforce an arbitration clause against a single plaintiff, it cannot—by definition—enforce a class waiver on an individual basis.

More generally, the decision below is incompatible with the "nature of class actions and the logic of class waivers." *In re Marriott, Int'l*, 78 F.4th at 686. In remanding, this Court explained that class certification is "the sharp line of demarcation between an individual action seeking to become a class action and an actual class action." *Id.* (cleaned up). The district court effectively erased that line by holding that Marriott relinquished its class-action waiver as to nonparties by litigating against named plaintiffs. That makes no sense. The named plaintiffs are the only parties to the litigation before class certification, the "critical act" that

14

"renders [unnamed class members] subject to the court's power." *In re Checking Acct. Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir. 2015).

The district court's finding of waiver based on acquiescing to MDL proceedings is both wrong and wholly unprecedented. *Cf. Lombardi v. DirecTV, Inc.*, 549 F. App'x 617, 619-20 (9th Cir. 2013). The decision below misread the parties' agreement, which agreed to forgo class actions, not MDL proceedings, and misunderstood the nature of MDLs, in which constituent actions remain separate. If this Court does not correct the district court's errors, no defendant would acquiesce to any MDL despite potential efficiencies for parties and courts, lest they inadvertently waive their contractual rights. That benefits no one.

## II.    The Classes Are Not Ascertainable.

In its original order, the district court correctly recognized that plaintiffs' overpayment theory raises Article III concerns because many hotel guests are reimbursed in full. Because those uninjured individuals lack standing, it rewrote the class definition to include only individuals "who bore the economic burden" of their hotel stay. JA1234-1241 (cleaned up), JA1230, JA1252. In attempting to fix one insuperable problem, it created another: ascertainability.

15

Ascertainability is "an 'essential' element of class certification" "encompassed" by Rule 23. 1 Newberg and Rubenstein on Class Actions § 3:2 (6th ed.); *Adair,* 764 F.3d at 358. A "textually-grounded component of express requirements in Rule 23," 1 McLaughlin on Class Actions § 4:2 (20th ed.), it follows directly from Rule 23(c)'s requirement that "[a]n order … certif[ying] a class action must define the class and the class claims, issues, or defenses." Fed. R. Civ. P. 23(c). Because of that requirement, "plaintiffs must define and establish the existence of an aggrieved class that is ascertainable by reference to objective criteria." 1 McLaughlin on Class Actions § 4:2; *Marcus,* 687 F.3d at 592-93; *Rivera v. Exeter Fin. Corp.,* 829 F. App'x 887, 887-88 (10th Cir. 2020) (Mem.); *Groussman v. Motorola, Inc.*, 2011 WL 5554030, at *7 (N.D. Ill. Nov. 15, 2011).

Consistent with these principles, this Court "requires a *heightened* ascertainability showing before a class is certified." 1 McLaughlin on Class Actions § 4:2 (emphasis added); *Rivera*, 829 F. App'x at 887-88; *Groussman*, 2011 WL 5554030, at *7. Under this Court's precedent, "[a] class cannot be certified unless a court can readily identify the class members *in reference to objective criteria*," *Adair*, 764 F.3d at 358

(emphasis added), and without individualized inquiries, *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024).

That makes good sense. Unless absent class members are identifiable, courts cannot perform Rule 23's "rigorous analysis." *Comcast*, 569 U.S. at 35 (cleaned up); *see Hammond v. Powell*, 462 F.2d 1053, 1055 (4th Cir. 1972) (class members must be "readily identifiable"). Without a ready means of ascertaining who belongs in the proposed class, plaintiffs cannot show that common questions "predominate," or that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The need to enforce these essential requirements goes beyond mere prudential concerns. As the Supreme Court has held, Rule 23's requirements provide crucial safeguards, grounded in constitutional due process principles, that must be satisfied before plaintiffs can benefit from the class-action device. *See Taylor v. Sturgell*, 553 U.S. 880, 901 (2008).

Taking the approach that this could all work itself out in the wash, the district court nevertheless concluded that the requisite

17

"individualized review" of "individual files" was no obstacle to certification because parties could self-certify that they paid for their hotel stay, affidavits could be cross-checked against databases, and plaintiffs could rely on individual "receipts and bank and credit card statements." *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 145-46 (D. Md. 2022), *vacated and remanded sub nom. In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023), *reinstated by* 345 F.R.D. 137 (D. Md. 2023). But defendants are entitled to dispute that evidence. *Wal-Mart*, 564 U.S. at 367. And neither plaintiffs nor the court explained how they could resolve those disputes without "extensive and individualized fact-finding or mini-trials" inappropriate for class litigation. *Adair*, 764 F.3d at 358 (cleaned up).

The court did note that although identifying class members would be "time consuming," it would "carefully monitor" the case "to ensure continued administrative feasibility." *In re Marriott Int'l,* 341 F.R.D. at 145-46. But this Court has "flatly held that 'when the defendants' affirmative defenses ... may depend on facts peculiar to each plaintiff's case, class certification is erroneous,'" *Gunnells*, 348 F.3d at 438 (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 342

(4th Cir. 1998)), and named plaintiffs must "affirmatively demonstrate" that the class can be ascertained without such cumbersome individualized adjudications, *Comcast*, 569 U.S. at 33, 35 (cleaned up); *see Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 275 (2014) (plaintiffs "must actually *prove*—not simply plead—that their proposed class satisfies each requirement of Rule 23"). In giving plaintiffs a pass, the district court violated Rule 23 and put defendants in the untenable situation of litigating against an unknown and unknowable group.

## III. The Court Erroneously Certified "Element-Only" Classes.

Federal Rule of Civil Procedure 23(c)(4) provides that "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues." *Id.* One question this appeal raises is whether courts can rely on Rule 23(c)(4) to certify a class as to a specific issue—particularly an issue that does not resolve an entire claim—even when the entire claim does not satisfy Rule 23(b)(3)'s predominance requirement. The proper interpretation of this Rule and "the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3) and that (c)(4) is a housekeeping rule that allows courts to sever the common issues for a

class trial." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 745 n.21 (5th Cir. 1996); *Harris v. Med. Transp. Mgmt., Inc.*, 77 F.4th 746, 760 (D.C. Cir. 2023) (court had to ensure that issue classes "satisfied one of the three types of authorized class actions under Rule 23(b)"), *cert. denied sub nom. Med. Transp. v. Harris*, 2024 WL 674822 (U.S. Feb. 20, 2024).

A contrary rule would create a situation in which Rule 23(c)(4)'s language swallows the rest of the rule, raising real constitutional concerns. *Harris*, 77 F.4th at 760 (noting that it would "be passing strange for a Rule as systematized, specific, and detailed as Rule 23 to unleash a distinct and wholly unregulated class device in (c)(4)'s single sentence."). In particular, "the predominance inquiry is an important safeguard against unreasonably fractured litigation, and simultaneously protects the rights of named parties and absent class members alike." *Id.* at 762; 2 Newberg and Rubenstein on Class Actions § 4:49 (6th ed.) (The predominance requirement ensures that individual class members are "sufficiently similarly situated" such that "due process permits their claims to be compromised in the aggregate.").

Moreover, as the Supreme Court has clarified, class members must share a concrete injury, and "[e]very class member must have Article III

20

standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425, 431 (2021). Plaintiffs "must demonstrate standing for each claim that they press and for each form of relief that they seek." *Id.* That standing requirement is also incorporated in Rule 23(a). To pass the Rule 23(a) threshold analysis, plaintiffs must show that "class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 348-50 (quotation marks omitted); *see also Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 304 (4th Cir. 2013) (per curiam) (class must have "a shared injury"). And to pass the Rule 23(b) predominance requirement, plaintiffs must show that common questions regarding injury would predominate over individualized inquiries. *E.g., Branch v. GEICO*, 323 F.R.D. 539, 551-52 (E.D. Va. 2018) (predominance not met where "individualized questions remain about which class members suffered a concrete injury"); *see also Ealy*, 514 F. App'x at 304-05; *Bartels v. Saber Healthcare Grp., LLC*, 2020 WL 6173566, at *2 (E.D.N.C. Oct. 21, 2020). This class plainly could not satisfy that inquiry.

Nevertheless, the court here erroneously recertified the "element-only" classes on the negligence claims. JA1257-1259. And unlike cases that simply separate out one claim from others or divide up a claim to

allow for individualized damages determinations if (and only) if liability is established as a class consistent with Rule 23, this case goes even farther by certifying a partial liability class that leaves critical elements like the "fact of injury, injury causation, etc." to separate individual trials. JA1258. That stretches Rule 23(c)(4) far beyond its proper bounds.

By certifying a class as to duty and breach alone, the district court's piecemeal approach dispenses with Article III's injury requirement. Allowing litigation of individual elements of a claim—neither of which separately or together establish the core standing requirements of injury-in-fact and traceability—opens the door to class members who may have suffered no injury at all, and certainly no injury that is traceable to the defendants' conduct. And by permitting litigation that ultimately must end for those class members before a liability determination, the district court's approach invites advisory opinions. *See TransUnion*, 594 U.S. at 423-24.

That approach also raises substantial Seventh Amendment concerns because any facts found by a jury deciding the certified common issues of duty and breach may be reexamined by later juries that must

decide the individualized questions of causation and injury that overlap with those common issues. *See* Unfair, Inefficient, Unpredictable at 44.

This Court previously declined to resolve whether an entire claim must meet Rule 23(b)'s requirements or whether Rule 23(c)(4) allows courts to bypass the predominance requirement by selecting individual elements of a single claim for class treatment.[2] *Gunnells*, 348 F.3d at 444-45. *Gunnells* held that before applying Rule 23(c)(4) to certify issues classes, a court must first determine whether Rule 23's predominance requirement is met "by examining *each cause of action* independently of one another, not the entire lawsuit." 348 F.3d at 441 (emphasis in original). Then, finding that "[p]laintiffs' cause of action as a whole against [defendant] satisfie[d] the predominance requirements of Rule 23[,]" the Court declined to opine on "whether predominance must be shown with respect to an entire cause of action, or merely with respect to

---

[2] Other circuits interpreting Rule 23(c)(4) agree that issue class certification is appropriate only when the issue class itself satisfies the requirements of Rule 23(a) and the predominance and superiority requirements of Rule 23(b)(3). *See, e.g., Black v. Occidental Petroleum Corp.*, 69 F.4th 1161, 1186-87 (10th Cir. 2023); *Martin v. Behr Dayton Thermal Prods. LLC*, 896 F.3d 405, 413 (6th Cir. 2018); *In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 226-27 (2d Cir. 2006); *In re Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005); *Valentino v. Carter-Wallace, Inc.,* 97 F.3d 1227, 1234 (9th Cir. 1996).

a specific issue, in order to invoke (c)(4)." *Id.* at 444-45 (emphasis altered). The Court should now make clear that a cause of action, *as a whole*, must satisfy Rule 23(b)(3)'s predominance requirement. *Castano*, 84 F.3d at 745 n.21.

Rule 23(c)(4), which allows a class action to "be brought or maintained … with respect to particular issues," is a case-management rule, not a revolutionary device that permits element-by-element litigation. The structure of Rule 23 is informative. Rule 23(a) lists the four prerequisites of all class actions, Rule 23(b) offers three "types of class actions," and Rule 23(c) provides case-management tools and procedural requirements. A "party seeking certification must demonstrate, first, that" the class satisfies Rules 23(a) and, second, that "the proposed class" satisfies "at least one of the three requirements listed in Rule 23(b)." *Wal-Mart*, 564 U.S. at 345; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997) ("In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."). While Rule 23(a) and (b) set forth mandatory prerequisites, Rule 23(c)(4)'s placement alongside Rule 23(c)'s other provisions proves that it is only a case-

management rule—nothing more. *See Murphy v. Smith*, 138 S. Ct. 784, 789 (2018) (looking to the "surrounding statutory structure" to determine the meaning of a statutory provision).

None of Rule 23(c)'s provisions supplant Rule 23(a)'s and (b)'s substantive requirements or provide a standalone basis for class certification. Had the Rules Committee intended to permit elements-only issues classes that did not meet Rule 23(a) and (b)'s requirements, it would not have hidden such a significant expansion of the class-action device in a part of the rule dedicated to case management. More fundamentally, turning Rule 23(c)(4) into more than a mere case management tool would raise serious concerns, as it would allow plaintiffs to make an end run around essential class-action requirements. For instance, plaintiffs could avoid Rule 23(b)(3)'s predominance requirement merely by disassembling claims into their separate components. They could even circumvent the protections that apply to mass actions, including the requirement that claims may not be consolidated or coordinated solely for pretrial proceedings. *See* 28 U.S.C. § 1332(d)(11)(B)(ii)(IV). In short, the structure and logic of Rule 23(c)(4) confirms that it is designed merely to allow a district court to limit class

treatment to particular issues when "an action"—not elements of claims—satisfies Rule 23(b)(3).

The district court's contrary approach would let cases proceed as class actions even in scenarios the Supreme Court has disapproved. In *Comcast*, for example, the Court rejected the proposed class because plaintiffs failed to "establish[] that damages are capable of measurement on a classwide basis." 569 U.S. at 34. But an "element-only" approach to Rule 23(c)(4) would have allowed plaintiffs to proceed on the question whether Comcast engaged in "anticompetitive clustering conduct," *id.* at 31, leaving causation, injury, and damages for individual determination. *See Wal-Mart,* 564 U.S. at 349–50 ("Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" not just a violation of the same provision of law."). If this Court were to endorse that approach, would-be class-action plaintiffs would use Rule 23(c)(4) to slice and dice their claims in an end run around Rule 23(b)'s requirements, controlling case law, and the Article III requirement that plaintiffs demonstrate injury-in-fact. The Rule should not be interpreted to allow plaintiffs to dodge guiding precedent so easily.

## IV. Improper Class Certification Severely Burdens Businesses and the Economy.

Class certification creates often insurmountable pressure on defendants to settle regardless of the merits of their defenses. *Marcus*, 687 F.3d at 591 n.2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 350 (2011) (noting "risk of 'in terrorem' settlements"). As a result, "even a complaint which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 740 (1975).

Because of the difficulties of litigating a case once it is certified as a class action, virtually all certified class actions "end in settlement" before trial. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Awards*, 7 J. Empirical Legal Stud. 811, 812 (2010). And for good reason: Class-action litigation cost U.S.-based companies $3.9 billion in 2023 and is expected to exceed $4 billion in 2024. *See* Carlton Fields, 2024 Class Action Survey at 6, *available at* https://tinyurl.com/4r63bw6n; *see also* Unfair, Inefficient, Unpredictable at 25-26. Defending a single class action can run into nine figures and drag on for years. Unfair, Inefficient, Unpredictable at 15, 36; *see* Do

Class Actions Benefit Class Members?, *supra*, at 1 ("Approximately 14 percent of all class action cases remained pending four years after they were filed.").

Properly enforcing class waivers and Rule 23's requirements at the outset ensures that parties do not waste time and money litigating claims only for a court to conclude that significant portions of the certified class lack standing or cannot prove essential elements of their claims. Moreover, even after substantial money and time are poured into litigating class actions, any benefits from the actions rarely reach class members. *See* Unfair, Inefficient, Unpredictable at 12-21, 26. And because the costs of this process are ultimately borne by consumers, "to the extent there are any winners in class actions, they are not consumers." *Id.*

Even assuming some class-action settlements benefit class members and society, they do so only if members can be ascertained. Certifying classes whose members cannot be ascertained only disincentivizes efficient settlements and incentivizes coercive ones. That in turn results in higher prices for consumers and lower wages for employees.

Similarly, elements-only class actions are highly inefficient for class members, defendants, courts, and consumers alike. Even if plaintiffs succeed in establishing duty and breach, they will have no prospect of obtaining any damages. Instead, there would need to be hundreds of thousands of individual suits to determine the issues of causation, injury, and damages—the cost of which might well exceed the costs of individual litigation. *See* Unfair, Inefficient, Unpredictable at 43-44.

## CONCLUSION

The district court's order certified classes encompassing nearly 20 million individuals and turned the principle that class actions are the exception, not the rule, on its head. Neither that result nor the court's reasoning can be squared with Article III, Rule 23, or basic due process. If the district court's decision stands, it will have sweeping consequences for courts and parties alike by discouraging participation in MDLs, allowing end-runs around constitutional principles and controlling caselaw, and adding to the immense pressure to settle improper class actions. This Court should reverse.

<br>

Respectfully submitted,

*/s/ Anne M. Voigts*

| | |
|---|---|
| Jennifer B. Dickey | Ashley C. Parrish |
| Jordan L. Von Bokern | KING & SPALDING LLP |
| U.S. CHAMBER | 1700 Pennsylvania Avenue NW |
| LITIGATION CENTER | Washington, DC 20006 |
| 1615 H Street NW | (202) 737-0500 |
| Washington, DC 20062 | aparrish@kslaw.com |

*Counsel for the Chamber of Commerce of the United States of America*

Anne M. Voigts
KING & SPALDING LLP
601 South California Avenue
Ste. 100
Palo Alto, CA 94304
(650) 422-6700
avoigts@kslaw.com

*Counsel for Amici Curiae*

March 26, 2024

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure Rule 32(a), I certify that this brief complies with the length limitations set forth in Fed. Rule App. Proc. 32(a)(7) because it contains 5,784 words, as counted by Microsoft Word 2013, excluding the items that may be excluded under Federal Rule 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook Font.

Dated: March 26, 2024

/s/ Anne M. Voigts
Anne M. Voigts
*Counsel for Amicus Curiae*